**Virginia Grace MASSEY–HOLT**

v.

**Stacy Wade HOLT.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Assigned on Briefs Sept. 19, 2007.

Oct. 31, 2007.

Permission to Appeal Denied by Supreme Court April 14, 2008.

Timothy P. Underwood, Pulaski, TN, for the appellant, Virginia Grace Massey–Holt.

Robert D. Massey, Pulaski, TN, for the appellee, Stacy Wade Holt.

**OPINION**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

This is a post-divorce modification case. The parties' divorce judgment, which was entered on November 3, 2004, was based upon their Marital Dissolution Agreement and an agreed Permanent Parenting Plan. Under that plan, Virginia Grace Massey–Holt ("Mother") was designated as the primary residential parent of Noah Wade Holt (DOB: August 26, 1999) and Joshua Thomas Holt (DOB: April 30, 2002). In the instant proceedings, Stacy Wade Holt ("Father"), filed a petition seeking to be named the children's primary residential parent and asking that the "parenting time be adjusted." Following a hearing, the trial court named Father as the primary residential parent and adjusted the residential parenting time. Mother appeals. We reverse, reinstate the trial court's previous designation of Mother as the primary residential parent, and adopt Mother's proposed Permanent Parenting Plan.

I.

We start our analysis with a brief review of the pertinent portions of the parties' divorce. Under the Permanent Parenting Plan adopted by the trial court and incorporated by reference into the judgment of divorce, Father had responsibility for the children's care from 7:00 AM Tuesday until 7:00 PM Thursday every week and from 5:00 PM Friday until 5:00 PM Monday every other week. This residential sharing schedule resulted in nearly equal time for each parent. It involved multiple transfers of the children during each two-week period, but Mother and Father lived

approximately eight miles apart when the plan was adopted, so the travel required between the parents' homes was apparently expected to be relatively minimal.

Two months after the divorce, in January 2005, Mother moved from Giles County to the adjoining county of Maury to pursue an employment opportunity. Specifically, she moved to Columbia, Tennessee—roughly halfway between her job in Nashville and Father's home in Minor Hill. Her new home is approximately 35 miles from Minor Hill, close enough that she was entitled to move there without seeking approval from the trial court or Father. Tenn.Code Ann. § 36–6–108. However, the move resulted in longer drives to and from each parent's home to "hand off" the children. It also resulted in educational changes. At the time of Mother's move, the older son, Noah, was in kindergarten at Minor Hill Elementary School. Despite Mother's move, the child remained in the Minor Hill School where he finished the 2004–2005 school year. Mother chose not to move him at the time of her relocation because she did not want to disrupt his kindergarten year.

In July 2005, prior to the start of the new school year in August, Mother wrote a letter to Father requesting changes to the residential sharing schedule in light of her move. She suggested "consolidating our blocks of time" to create "a more predictable schedule for them and less time spent in transit." Father did not reply in writing to Mother's letter, and both parents' testimony indicates they never sat down to discuss the matter—though they dispute who was responsible for this failure of communication. In any event, Mother subsequently sent a second letter to Father indicating that she had enrolled Noah, who was getting ready to start first grade, at Baker Elementary School in Columbia. Mother testified that Father's response to

this second letter was "[a]nger, rage, phone calls, hang-up phone calls." Father—who himself attended Minor Hill Elementary when he was a child—attempted to re-enroll Noah at Minor Hill, but that attempt lasted just one day. He then filed a Petition for Modification of the Permanent Parenting Plan in late August 2005, alleging a material change of circumstances based on Mother's move and the change of schools—which he claims is a violation of the Permanent Parenting Plan's requirement that "education decisions" be made jointly. Father's petition requested that the court name Father the primary residential parent and adjust the "observed parenting time ... so that the children are with the father more...."

No immediate action was taken on Father's modification request, and Noah attended first grade at Baker Elementary throughout the 2005–2006 school year. Then in August 2006, Father again sought relief from the court, requesting a pendente lite hearing and/or an order regarding where Noah should be enrolled pending the resolution of the Petition for Modification. The court directed that Noah remain at Baker Elementary pending trial, and thus Noah took second-grade classes at Baker throughout the first half of the 2006–2007 school year.

A trial was held on the Petition for Modification in November 2006. Each parent testified that the other is a good parent, well-loved by the children, and not unfit for continued parenting responsibilities. Both parents stated that they did not wish to reduce the amount of time the other parent had to spend with the children, but both also testified that the current schedule was not working well. Confusingly, however, Father later stated that "[w]e can keep the same schedule as far as the kids are concerned," although he added that "[i]t may be feasible to modify [the

schedule] for the sake of them not being on the road so much." Father did not specify how these modifications would be accomplished, nor did he submit a written proposal or a revised Permanent Parenting Plan. Mother, by contrast, did submit such a plan, in which she proposed that Father have the children every week from 3:00 PM Thursday until 5:00 PM Sunday. This comported with her previously-expressed desire to "consolidate" the residential sharing schedule. On the other hand, it is difficult to discern from the record precisely what Father wanted to accomplish in terms of the schedule. What is clear is that he wanted to be named primary residential parent, and that he wanted the children to be enrolled in the Minor Hill school system.

Approximately two weeks after trial, the court entered its order. It held that Mother's move had caused a material change in circumstances because it "necessitated that the children spend an inordinate amount of time traveling between the parent's [sic] homes." The court's order did not expressly state that a material change of circumstances had occurred with regard to the issue of who should be the primary residential parent. However, the court nevertheless proceeded to conduct a comparative fitness analysis and concluded:

> The court has considered the moral, physical, and financial capacity of each parent, as well as the sex of the children, and the nature of religious training which would be afforded to the children in each home all of which are factors that the court is obligated to consider. The court has further necessarily considered the statutory factors set forth in T.C.A. § 36–5–105(1)–(10) all of which are relevant in this case except for subsection (7) relative to the preference of a 12 year old child which is not relevant based on the ages of the children involved.

> The court is impressed with the support group that the father has and is concerned that on some occasions when the children are with the mother that they are with a nanny or a sitter as opposed to a family member. Taking the aforementioned factors into consideration, the court finds that the best interests of the children would be served by naming the father as the primary residential parent in this cause. This decision is neither intended nor designed to reward either parent nor to punish them for their human frailties, again as the children's best interests are the courts primary concern. The plaintiff/father has proven that this modification is in the best interests of the children.

The court then essentially switched the day-to-day residential sharing schedule contained in Mother's proposed Permanent Parenting Plan, giving responsibility for children's care to Father during the week and Mother on weekends. The court also did something neither parent had requested: it reduced Mother's time with the children. An exact, literal switch of Mother's proposed Permanent Parenting Plan would have placed the children with Mother from 3:00 PM Thursday to 5:00 PM Sunday (the times she requested that they be with Father), but instead, the court gave Mother the children only from 3:00 PM *Friday* to 5:00 PM Sunday.

Noah was enrolled once again at Minor Hill Elementary, starting in the second half of the 2006–07 school year, and has presumably remained there for the 2007–08 school year to date.[1]

---

**1.** To review, Noah was at Minor Hill Elementary for kindergarten, at Baker Elementary for first grade and the first half of second grade, and then back at Minor Hill for the

## II.

On appeal, Mother raises one issue— whether the trial court erred in determining that the best interest of the children is served by naming Father as the primary residential parent. While it is clear to us that Mother, at the modification hearing, agreed that there has been a material change in circumstances *with respect to the residential parenting time*, it is also clear that she did not agree that the circumstances had changed *with respect to who should be the primary residential parent*. As we interpret what occurred at the hearing, it is clear to us that this latter issue was very much "in play," hotly contested, and that both sides attempted to convince the trial court as to the merits of their respective positions regarding it. Since much of the evidence that went to "best interest" also tended to spill over into the question of material change of circumstances regarding primary residential parent, we will examine this issue as well as the one specifically raised by mother. *See* Tenn. R.App. P. 13(b) ("The appellate court … may in its discretion consider other issues [besides those that are raised].").

## III.

### A.

■ Our review is *de novo* upon the record of the proceedings below. However, that record comes to us with a presumption that the trial judge's factual findings are correct. Tenn. R.App. P. 13(d). We must honor this presumption unless we find that the evidence preponderates against those findings. *Id.; Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). There is no presumption of correctness with regard to the trial court's conclu-

sions on matters of law, *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn.2005), or to its application of law to the facts, *State v. Thacker,* 164 S.W.3d 208, 248 (Tenn.2005), or to "conclusions that are based on undisputed facts," *Hall v. Houston,* No. M2002–01371–COA–R3–CV, 2003 WL 21688578, at *3 (Tenn. Ct.App. M.S., filed July 21, 2003).

■ "[N]either trial nor appellate judges have any responsibility greater than to attempt to correctly adjudicate child custody disputes." *Deitmen v. Deitmen,* No. 86–30–II, 1986 WL 6057, at *1 (Tenn.Ct.App. M.S., filed May 29, 1986). "However, … the trial judge, not the appellate court, has the opportunity to observe the witnesses. All we can review is the cold printed word and the exhibits." *Id.* Therefore, a trial court has broad discretion regarding a custody determination. *Brumit v. Brumit,* 948 S.W.2d 739, 740 (Tenn.Ct.App.1997). We will not disturb such a determination unless the record reflects an abuse of that discretion.

### B.

■ The trial court in the instant case abused its discretion by misapplying Tennessee law with regard to modifications of child custody decrees. The statute governing such decrees makes clear that a "change in circumstance" with regard to the parenting schedule is a distinct concept from a "change in circumstance" with regard to the identity of the primary residential parent:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circum-

second half of second grade and for all of third grade so far. In addition, although this case was argued while Joshua, now five-and-

one-half years old, was still in pre-kindergarten, we assume he started kindergarten at Minor Hill this fall.

stance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child. . . .

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn.Code Ann. § 36–6–101(a)(2)(B–C). This statutory scheme is the result of a 2004 amendment, which means it was effective at all relevant times in the instant case. As we explained earlier this year,

[a]s a result of the 2004 amendment, Tennessee now has a different set of criteria for determining whether a material change of circumstance has occurred to justify a modification of a "residential parenting schedule" and the specifics of such a schedule. The amendment, specifically the addition of subsection (a)(2)(C), establishes different criteria

and a lower threshold for modification of a residential parenting schedule. However, the statutory criteria pertaining to a modification of "custody"—the term used in the statute, which we equate to the designation of "primary residential parent" and matters more substantive than a change of schedule—remain unchanged.

*Scofield v. Scofield,* No. M2006–00350–COA–R3–CV, 2007 WL 624351, at \*3 (Tenn. Ct.App. M.S., filed February 28, 2007) (citations omitted).

In the instant case, the trial court only found a change of circumstance with regard to the parenting schedule. The court's order is unambiguous on this point:

In this case the parties' parenting plan seemed to have worked extremely well until the mother decided to move to Maury County, which under relocation rules she was certainly entitled to do since the move only involved an approximate 35 mile move relative to her residence. Additionally, the court finds that the move was motivated by employment reasons. However, the move also necessitated that the children spend an inordinate amount of time traveling between the parent's [sic] homes. The court finds that this was a change that was not anticipated by the parties at the time the original decree and parenting plan were entered and that *this change no longer makes the original decree and parenting plan in the best interests of the children.* Additionally, both parents agreed that the original parenting plan needed to be changed for the children's sake and it is the best interests of the children[ ] which is the court's paramount concern in this cause. The parenting plan is *not workable based on the current residences of the parents.*

The court finds, *therefore,* that there has been a material and substantial change

of circumstances, which warrants the court's modification of the parenting plan. The change in circumstances has been proven by a preponderance of the evidence and has been agreed upon by the parties. These changes have certainly occurred (1) since the entry of the order sought to be modified; (2) they were not reasonably anticipated when the decree was entered; and (3) they affect the children's well-being in a meaningful way, all of which are required findings before the court should re-examine the comparative fitness of the parents.

(Emphases added.) It is on the last point that the court's analysis goes wrong. The existence of a change of circumstance with regard to the parenting *schedule* does not mean that "the court should re-examine the comparative fitness of the parents." Under Tenn.Code Ann. § 36–6–101(a)(2)(B) and (C), as interpreted by *Scofield,* the requisite change of circumstance must affect "matters more substantive than a change of schedule." 2007 WL 624351, at *3. Otherwise, the change can justify altering the court's prior *scheduling* order, but not its prior custody decision. The court's original decision to declare Mother the primary residential parent "is a final decree" and operates as *res judicata* absent a material change of circumstance. *Young v. Smith,* 193 Tenn. 480, 246 S.W.2d 93, 95 (1952). Simply put, a change affecting only the schedule *is not material* to the parents' fitness. Therefore, the court erred in conducting a new comparative fitness analysis because it found no material change of circumstance on the subject of the identity of the primary residential parent.

### C.

█ Nor *could* the court have held, based on this record, that there had been a change of circumstance justifying a new comparative fitness analysis and a switch of primary residential parent status. The evidence would have preponderated against any such holding. As noted earlier, both Mother and Father vouched for each other's fitness as a parent. Both testified that the other parent has a strong relationship with the children, and neither expressed any desire to limit the other's time with the children. The court held that "both of these parents appear to love their minor children and ... have worked well together regarding what is in the children's best interest."

The two factors specifically cited by the court to support its change of primary residential parent status are both manifestly inadequate to constitute a change of circumstances in this regard. The court said it is "impressed with the support group that the father has," but there was extremely limited evidence about this issue—Father himself was the only witness to testify on his behalf; none of the "support group" members were brought in— and there was no indication that this "support group" constitutes a "change." In this connection, it is interesting to note that Father's counsel, in his opening statement, said "Mr. Holt has a large support group *that you'll hear from later.*" (Emphasis added). As noted, no such witnesses testified.

As for the concern that "on some occasions when the children are with the mother ... they are with a nanny or a sitter as opposed to a family member," the court's remedy actually makes this purported problem *worse,* since the court's parenting schedule puts the children with Mother during the weekends, when she sometimes has to work (whereas Father is typically home on the weekends). As noted in Mother's brief, "the Court's concern about the children being with a nanny or sitter during very limited periods of time while

in the Mother's care [under Mother's proposed schedule] actually becomes a real and legitimate concern under the newly ordered plan." In any event, the evidence would preponderate against any finding that either of these concerns constitutes a material change of circumstance.

■ To the extent that the court's concern may have been centered on the identity of the children's "sitter" as Mother's lesbian girlfriend, we find this concern unfounded and irrelevant. Likewise, if the court penalized Mother for her sexual orientation in its analysis of the "moral . . . capacity of each parent," this was error. As we noted in *Berry v. Berry*, 2005 WL 1277847 (Tenn. Ct.App. E.S., filed May 31, 2005), "[h]omosexuality is not a *per se* bar to custody. The key consideration is whether a parent's sexuality has a negative effect on a child's welfare." *Id.* at *3 (citations omitted). *See also Swinford v. Humbert*, 2007 WL 494997, at *2 (Tenn. Ct.App. E.S., filed February 16, 2007). In the instant case, as in *Berry* and *Swinford*, no evidence was presented of *any* negative effect on the children. If Father's testimony about nonspecific, speculative potential effects—e.g., that "it really concerns me how they can deal with" the knowledge of Mother's bisexuality, and the possibility they might be teased at school someday—were enough to establish a "negative effect," then for all practical intents and purposes, a *"per se* bar" would be established, in direct contravention of *Berry*. It is clear to us that this relationship was a major part of Father's change of circumstances/best interest argument as a significant part of his testimony was focused on this matter.

Nor can we find anything else in the record to suggest that a change of circumstances occurred as regards the relative fitness of the parents. In particular, we reject any suggestion that Mother is guilty of a "failure[ ] to adhere to the parenting plan" simply because she enrolled Noah at Baker Elementary School. This decision cannot have violated the Permanent Parenting Plan's requirement that educational decisions be made jointly, because Mother's move to Maury County was well within the allowed mileage radius, and the move necessitated the change of school enrollment.[2] If Father's argument regarding joint educational decisions were accepted, it would essentially result in a vast *de facto* tightening of the restrictions on divorced parents' freedom of movement, contravening the legislature's intent in allowing essentially unfettered relocation within a 100–mile radius. Tenn.Code Ann. § 36–6–108. Mother's decision to do something that she was, in the court's words, "certainly entitled to do," should not be viewed as a strike against her in these proceedings. It is also significant that Mother's attempt to engage Father in a dialogue *vis-a-vis* parenting time—an attempt that occurred *before* Mother moved the child to the Columbia school—was ignored by Father.

With regard to Father's allegation regarding "the mother's failure to adhere to the shared parenting time and travel arrangements in the plan," this claim is not supported by any evidence in the record. Moreover, although "failures to adhere to the parenting plan" can constitute a change of circumstance under § 36–6–101(a)(2)(B), it is also important to note that custody decisions "are not intended to

---

**2.** Father testified thusly: "According to the school rules . . . it says they will go to school in the district where they spend the most time." Moreover, in addition to school-system regulations, it would not generally be in the child's best interest to have a lengthy commute to school every day.

reward or to punish parents," *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct.App.1997), and "[i]t is well-settled that child custody and visitation should not be granted or withheld for punitive purposes." *Hopkins v. Hopkins*, No. M2002–02233–COA–R3–CV, 2003 WL 21462971, *4 (Tenn.Ct.App. M.S., filed June 25, 2003) (perm. app. granted December 15, 2003, as to issue unrelated to this case).

While we find no factual predicate for conducting a new comparative fitness analysis, we do find, for the bulk of the reasons previously stated, that the evidence preponderates against a finding that it is in the best interest of the children to change the primary residential parent designation from Mother to Father. Furthermore, the evidence is clear that Mother has been the primary caregiver throughout the children's lives. Simply stated, there is no factual basis for changing this critical designation.

For all of the foregoing reasons, we reverse the trial court's order declaring Father the primary residential parent, and restore its previous order declaring Mother the primary residential parent, effective immediately.

## IV.

With regard to the parenting schedule, although both sides conceded that a change of circumstances occurred and therefore the court was entitled to modify its previous scheduling order, the evidence clearly preponderates against the particular modifications made by the court. As we have previously noted,

> Trial courts have broad discretion to fashion parenting plans that best serve the interests of the children. They must, however, base their decisions on the evidence presented to them and upon the proper application of the relevant principles of law. While we are reluctant to second-guess a trial court's decisions regarding a parenting plan, we will not hesitate to do so if we conclude that the trial court's decision is not supported by the evidence, that the trial court's decision rests on an error of law, or that the child's interests will be best served by another parenting arrangement.

*Shofner v. Shofner*, 181 S.W.3d 703, 716 (Tenn.Ct.App.2004) (citations omitted). In the instant case, the court's decision is not supported by the evidence and does not serve the best interest of the children. The court took the day-to-day schedule contained within Mother's Permanent Parenting Plan proposal and virtually "flipped" it, giving Mother the children on the days she wanted Father to have them (minus Thursdays) and vice versa. This makes no logical sense, and is unsupported by any evidence in the record. Indeed, it is *contrary* to the evidence, which establishes that Mother has greater availability during the work week and Father has greater availability on weekends, due to their respective work schedules.[3]

Moreover, to whatever extent the court's scheduling decision may have been motivated by a desire to place the children in the Minor Hill school system, this too was contrary to the evidence. The only evidence presented regarding the relative strengths of the school systems showed that Baker Elementary is ranked more highly than Minor Hill Elementary in state evaluations. Father's desire that his children attend school at Minor Hill, where he also attended school as a child, is not

---

3. Mother is a nurse, and works three 12–hour shifts each week, from 7:00 PM to 7:00 AM, sometimes including weekend shifts, but stays at home on the other four days. Father works more of a typical, "nine to five"—type work schedule.

enough by itself to sustain the court's ruling. Father did not demonstrate that the best interest of the children would be best served by this change.

Father did not submit a Permanent Parenting Plan. His failure to do so violates Tenn.Code Ann. § 36–6–405(a), which requires that "[i]n a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification." Because Father did not submit a plan, Mother's plan is the only proposal currently in front of this court. Upon consideration of all the evidence in the record, we conclude that Mother's plan adequately addresses the changed circumstances that gave rise to the need for a modification in the first place. We therefore adopt Mother's proposed Permanent Parenting Plan, effective immediately, except as noted in the next paragraph.

### V.

Mother is declared the primary residential parent of both children, and is instructed to enroll them at the proper school based on their residence with her—which, according to the evidence in this record, is currently Baker Elementary—starting in January 2008, after the winter holidays. The delay until the new year is intended to minimize disruption to the children's lives and routines. The other terms of the plan are effective immediately.

### VI.

In summary, the judgment of the trial court changing the children's primary residential parent from Father to Mother is hereby reversed and the trial court's divorce judgment designating Mother as the primary residential parent is hereby reinstated. We modify the trial court's judgment with respect to the residential parenting schedule as more fully set forth in this opinion. Costs on appeal are taxed against the appellee, Stacy Wade Holt. This case is remanded to the trial court for enforcement of the trial court's judgment as modified by this opinion.