# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 18, 2011 Session

## KEVIN DALE SCHREUR v. HOLLYE RICHELLE GARNER

**Appeal from the Chancery Court for Williamson County**
**No. 33534      Robbie T. Beal, Judge**

---

**No. M2010-00369-COA-R3-CV - Filed June 20, 2011**

---

The parents of two children were divorced in 2007, and Father was named the primary residential parent. Mother filed a petition in 2008 seeking a modification of the residential parenting schedule and requested that she be named the primary residential parent. The trial court found no material change of circumstance to warrant changing the primary residential parent from Father to Mother, but found it to be in the children's best interest to modify the parenting schedule so that the children spent alternating weeks with Mother and Father. Father appeals, arguing the trial court had no grounds upon which to modify the residential schedule. We conclude the evidence supports the trial court's decision that it is in the best interests of the children to spend alternating weeks with each parent. Under the relevant statute, that is sufficient to establish a material change of circumstance. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

David W. Garrett, Nashville, Tennessee, for the appellant, Kevin Dale Schreur.

Virginia Lee Story, Franklin, Tennessee, for the appellee, Hollye Richelle Garner.

### OPINION

Hollye Richelle Garner ("Mother") and Kevin Dale Schreur ("Father") were divorced in 2007, and Father was named the primary residential parent of their two minor children. Mother filed a petition in 2008 seeking to alter the residential parenting schedule and to change the primary residential parent from Father to herself. The trial court concluded there

was not a material change of circumstances to warrant changing the primary residential parent to Mother from Father, but that the best interests of the children warranted changing the residential parenting schedule such that the children spent alternating weeks with Mother and Father. Father appealed, claiming the trial court erred in changing the residential schedule. For the reasons set forth below, we affirm the decision by the trial court.

## I. BACKGROUND

When Mother and Father were divorced in 2007, their children were 7 and 9 years old. The Permanent Parenting Plan Order entered by the trial court (the "parenting plan") provided that Mother would have the children with her from Friday afternoon at 3:30, or after school, until 8:00 Tuesday morning, or the beginning of school, every other week. On Tuesdays following a weekend when Mother did not have the children, she was awarded parenting time from 3:30 p.m., or after school, until 8:00 Wednesday morning, or the beginning of school. The parenting plan also provided that when Father was traveling, Mother would have the children with her, and when Mother was traveling, Father would have the children with him.

The parenting plan included the following special provision:

Mother shall submit to counseling every other week with a licensed clinical psychologist for the next twelve (12) months at her expense. Mother shall attend counseling with said psychologist for as many times as the psychologist recommends, but it shall be no less than every other week for the next twelve (12) months. At the end of said 12 months, Mother's parenting time shall be reviewed in mediation with Rule 31 mediator Russ Heldman and the parties shall agree as a result of mediation as to whether Mother's parenting time should be adjusted. In the event the parties cannot agree in mediation as to whether there should be an adjustment, either party may petition the Court for relief.

Mother and Father participated in mediation in May 2009 as required by the parenting plan, but they were unable to agree to a modification of Mother's parenting time. Mother therefore filed a Petition for Modification of Parenting Plan and Enforcement. In her petition Mother sought to be named the primary residential parent and to have the children spend alternating weeks with each parent. One of the reasons Mother wanted to be named the primary residential parent was because her house was zoned for the school their daughter wanted to attend, whereas Father's house was zoned for a different middle school. Mother requested a different residential schedule to provide the children with more stability week to week. The parties' son apparently was having difficulty in school, and Mother believed

it would be easier for both Mother and Father to assist their son with his school work if he was not spending the night at different houses during the school week. Mother also believed it was difficult for the children to remember whether to stand in the carline or the busline after school each day, which depended on whether they were going to Mother's house or Father's house that day.

Father denied there was a material change of circumstance to support either Mother's request to be named the primary residential parent or to alter the residential parenting schedule. Father pointed out that Mother had not attended all of the counseling sessions she was required to attend in the twelve months following the entry of the parenting plan, and he believed Mother's failure to complete these counseling sessions prevented her from obtaining any modifications to the parenting plan. Father filed a counter petition in which he requested Mother be found in criminal contempt for disobeying the court's order that she obtain counseling every other week for a year, and that she be jailed for ten days and fined $50 for each counseling session she missed. Both Mother and Father requested an award of attorney's fees.

## II. TRIAL COURT PROCEEDINGS

Following a hearing on November 23, 2009, the trial court found there was insufficient evidence of a material change of circumstance to justify changing the primary residential parent from Father to Mother, but that the best interests of the children warranted modifying the residential parenting time so that Mother and Father had the children on alternating weeks.[1] Following the close of evidence, the court addressed the parties and explained:

> Generally, before the court can change a parenting plan, I have to find that a material change of circumstances has occurred. I don't think that's the case here. I believe that the parenting plan, by its plain language, basically contemplated that there would be a review of the parenting arrangement. For purposes of the record, I didn't engage in an analysis of whether a material change of circumstances existed, but I think the court probably would be hard-pressed to find one. But I don't think I'm necessarily required . . . to engage in that analysis. . . . So it comes down to a best interest issue and a best interest issue alone.

---

[1]Evidence was presented during the hearing that the parties' daughter had adjusted well to the middle school her father's house was zoned for, and that Mother and Father were content to let her stay in that school.

With regard to best interest, again, to say one more time, the court finds that both arrangements, the one that's in place now, basically a couple of days extra every week, and the every other week is disruptive to a child. In this case, though, the court generally believes that a week on/week off arrangement would be less disruptive than what the parties have engaged in so far. . . .

The other thing that the court notes is, for this age of children, it is unusual or confusing to try to figure out if it's Tuesday or Wednesday or "Where am I supposed to be" or "What am I supposed to do" after school, and a week on/week off would assuage a lot of that confusion.

The court addressed Mother's failure to attend all the counseling sessions she was supposed to attend:

I think it's in the record that, at most, [Mother] attended 17 of the doctor appointments, instead of the 26 that I think was originally anticipated. But that compliance - - or that noncompliance, I don't think, should reflect negatively on her ability to care for the children. It has been shown that the children have done well under both of their care and that the mother is capable of caring for the children as well as the father.

With regard to Father's request that the court find Mother in criminal contempt for failing to attend all the counseling sessions she was ordered to attend, the court said:

With regard to the contempt of court action, there were some contempt of court allegations made. Technically speaking, the visits to the therapist or psychologist was a proper order of the court. The mother did not fulfill her obligations under that requirement. The court does believe that, again, technically speaking, it was a willful disobeyance of the court's orders. I don't believe that any real harm - - at least not that I was able to see - - any real harm was caused, but it is a violation. The court is basically going to find her in violation of one total disobeyance of the order. In other words, I'm lumping all of those visits into one basic cause. The court, at the very minimum, I'm going to order a $50 fine with regard to that and, basically, three hours of Mr. Garrett's attorney fees with regard to the contempt.

Lastly, the court addressed the both parties' requests for attorney's fees:

With regard to the attorney fees, the court does not believe the attorney fees are in order for either party here. Ms. Story argued that because it was

anticipated that there would be a review, that because this wasn't mediated and the mother had to bring the action, that she should be allowed reimbursement of attorney fees. The court again respectfully disagrees with that. Technically speaking, the parties really set themselves up to come back into the court with their agreed-upon parenting plans.

The Permanent Parenting Plan Order the court entered following the hearing (the "new parenting plan") included the following:

> IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Court finds that the parties anticipated a review of the parenting plan of October 2008 as stated in the Final Decree incorporating the terms of their agreed upon parenting plan. After hearing the testimony of the parties and review of the record as a whole the Court finds that there has not been a material change in circumstances that would warrant a change in the primary residential parent and therefore Father shall remain the primary residential designation however the Mother has met her burden of proof that the parenting plan should be modified to week to week based upon the best interest of the children. Not only would the week to week schedule be less disruptive for the children but it would also create more stability for the children. The Court finds that it is in the best interest of the children given the evidence before the court to go to a week to week schedule and that there is material evidence to support this modification.

> As to Father's allegation of contempt, the Court does find that Mother did not attend all counseling sessions on the schedule set forth in the parenting plan and therefore finds that said violation is willful however the Court does not find that there is any harm caused by the failure to attend all sessions but will fine Mother the sum of $50.00 and require that she pay 3 hours of Mr. Garrett's time within 30 days.

The parties presented evidence of their current incomes during the hearing, and based on that information and the change in time with the children, the court ordered Father to pay Mother monthly child support in the amount of $297. This is a change from the initial parenting plan, where Mother was ordered to pay Father monthly child support in the amount of $849.

### III. ISSUES ON APPEAL

On appeal Father contends the trial court erred by changing the residential parenting

schedule after finding (1) there was no material change in circumstances and (2) Mother failed to attend all the counseling sessions as required by the parenting plan; by modifying the child support order; by finding Mother liable for only one count of criminal contempt and fining her only $50; and by failing to award Father his attorney's fees. Father also asks that we award him his attorney's fees related to this appeal.

Mother argues on appeal that she is entitled to her attorney's fees at trial and on appeal.[2]

## IV. ANALYSIS

### A. MODIFICATION OF RESIDENTIAL PARENTING SCHEDULE

We review the trial court's findings of fact *de novo* based on the record of the proceedings in the trial court, although the court's findings are accompanied with a presumption of correctness unless the preponderance of the evidence is to the contrary. Tenn. R. App. P. 13(d). There is no presumption of correctness with regard to the trial court's conclusions of law or its application of the law to the facts of the case. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007).

The statute governing modifications of a residential parenting schedule provides:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. §36-6-101(a)(2)(C). We have reviewed this statute on numerous occasions and have determined that Tennessee has a different set of criteria for determining whether

_____

[2]Mother argued in her brief that the trial court erred in failing to name her the primary residential parent, but during oral argument Mother's counsel waived this argument.

a material change of circumstances has occurred to justify a change of custody, on the one hand, and whether a material change of circumstances has occurred to justify a modification of a residential parenting schedule, on the other hand. *See, e.g., Scofield v. Scofield*, M2006-00350-COA-R3-CV, 2007 WL 624351, at *2-3 (Tenn. Ct. App. Feb. 28, 2007) (statute addressing modification of residential schedule establishes different standards and sets lower bar than statute addressing modification of custody and change of primary residential parent).

The statute regarding changes to a residential parenting schedule "sets a very low threshold for establishing a material change of circumstances. Indeed, merely showing that the existing arrangement has proven unworkable for the parties is sufficient to satisfy the material change of circumstances test." *Rose v. Lashlee*, M2005-00361-COA-R3-CV, 2006 WL 2390980, at *3 n.3 (Tenn. Ct. App. Aug. 18, 2006) (citing *Rushing v. Rushing*, No. W2003-01413-COA-CV, 2004 WL 2439309, at *6 (Tenn. Ct. App. Oct. 27, 2004), and *Turner v. Purvis*, No. M2002-00023-COA-R3-CV, 2003 WL 1826223, at *4 (Tenn. Ct. App. Apr. 9, 2003)).

The trial court in this case concluded it was not required to engage in a material change of circumstances test to modify the residential parenting schedule because Mother and Father agreed as part of the initial parenting plan to revisit the issue a year later. As the record shows, Mother and Father participated in mediation with a Rule 31 mediator as directed by the initial parenting plan, presumably in an effort to agree to an adjustment in Mother's time with the children. Because the mediation was unsuccessful, Mother followed the correct course of action and filed a petition with the trial court seeking a modification of the parties residential parenting schedule.

Regardless of whether or not the initial parenting plan envisioned the parties' changing their parenting schedules in the future, Mother was not relieved of the obligation to prove by a preponderance of the evidence that a material change of circumstances has occurred affecting the children's best interest in support of her request to modify the parenting schedule. Thus, we disagree with the trial court's conclusion that a material change of circumstances analysis was not necessary.

However, as set out earlier, the threshold level of proof required to establish a material change of circumstances for purposes of a request for a modification of the residential parenting arrangement is very low, and we believe Mother has met her burden. To establish the necessary change of circumstance, the parent must only show "circumstances making a change in residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). Thus, in this situation, the trial court's determination that changing the residential schedule was in the best interest of the children was also a decision that there was a material change of circumstance.

Evidence was presented during the parties' hearing that the children had a difficult time remembering whose house they were supposed to go to after school during the weeks when they went back and forth between Mother's and Father's houses, and as a result sometimes went to stand in the carline when they should have gone to the busline, and vice versa. The parties' son was struggling in some academic areas, and Mother testified she would be more effective assisting her son with his school work if she could have him with her for an entire week, and thereby know what his requirements were that week, rather than having him for just a day here and there during the school week.

The evidence showed that both Mother and Father are good, caring parents who love their children and want to spend as much time with them as they can. There was no evidence to support Father's suggestion that Mother's failure to attend all the counseling sessions she was supposed to attend affected her ability to take care of her children, or that missing these sessions rendered her a less effective or competent parent in any way than Father was. *See Massey-Holt*, 255 S.W.3d at 609 (change of circumstance required to modify parenting schedule does not involve re-examination of parents' comparative fitness).

Based on the record of the proceedings, we believe the evidence supports the trial court's finding that alternating weeks with Mother and Father will provide the children with more stability and will be less disruptive to their schedules. We therefore affirm the trial court's conclusion that modifying the residential parenting schedule to an alternating week on/week off with each parent is in the best interests of the children. Accordingly, we also conclude that there was a material change of circumstances as defined in the applicable statute.

## B. MODIFICATION OF CHILD SUPPORT ORDER

Father argues that the trial court should not have modified the child support order because it did not find a material change of circumstances. The statute addressing child support provides for modification of support when there is found to be a significant variance between the amount that would be owed pursuant to the guidelines and the amount of support currently ordered. Tenn. Code Ann. §36-5-101(g)(1). Father does not argue the court failed to follow the child support guidelines or that the level of income the court attributed to Father was incorrect.

Instead, he argues that because the trial court's modification of the parenting plan was made without a finding of material change of circumstances, there was, in essence, no significant variance because the amount of parenting time would have remained the same. We agree with Father that the change in the residential parenting schedule was the trigger for the modification of child support. However, since we have affirmed the modification of the

residential parenting schedule, there was no error in the trial court recalculating child support based on the new plan.

## C. MOTHER'S CRIMINAL CONTEMPT

Father complains the court did not sufficiently punish Mother for neglecting to attend all the counseling sessions she was supposed to attend as set forth in the initial parenting plan. The trial court found Mother attended 17 of the 26 sessions she was required to attend, and that her violation of the court order was willful. However, the court also found there was no harm caused by Mother's failure to attend all the sessions. The court determined that an appropriate punishment for violating the court's order was imposing a fine of $50 and requiring Mother to pay three hours of Father's attorney's fees.

A court has the authority to find a party guilty of criminal contempt for failing to comply with a court order. Tennessee Code Annotated §16-1-103 provides: "For the effectual exercise of its powers, every court is vested with the power to punish for contempt, as provided for in this code." The courts are specifically empowered to inflict punishments for contempts of court for the "willful disobedience or resistance of any . . . party . . . to any lawful writ, process, order, rule, decree, or command of such courts . . . ." Tenn. Code Ann. §29-9-102(3). A court may punish a party for contempt by a fine of $50, imprisonment up to ten days, or both. Tenn. Code Ann. §29-9-103.

The language of the statute indicates that a court has discretion to determine the appropriate sanction for a willful violation of an order. *See* Tenn. Code Ann. §29-9-103(a) ("The punishment for contempt **may be** by fine or by imprisonment or both.") (Emphasis added.) Father does not explain why Mother should be fined more than $50 or why she should be imprisoned for failing to attend all the counseling sessions. Moreover, Father presented no testimony or other evidence suggesting that he or the children suffered in any way as a result of Mother's failure to attend all the counseling sessions. We find the court did not abuse its discretion in sanctioning Mother for just one violation of its order.[3] *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (trial court abuses its discretion only when it applies an incorrect legal standard or reaches an illogical decision that causes the complainant to suffer an injustice).

---

[3]Mother does not appeal the court's decision to require her to pay three hours of Father's attorney's fees as punishment for violating the court's order.

## D. ATTORNEY'S FEES

Both Mother and Father rely on Tenn. Code Ann. §36-5-103(c) to argue the trial court erred in failing to award them their attorney's fees at trial, and they both contend they are entitled to recover their fees on appeal. This statute gives trial courts discretion to award a party his or her attorney's fees incurred in enforcing any decree for alimony and/or child support, or in connection with an action involving the change of custody of the parties' children. We will not interfere with the trial court's decision not to award attorney's fees without a clear showing that the court abused its discretion. *See Smith v. Smith*, 984 S.W.2d 606, 610 (Tenn. Ct. App. 1999) (allowance of attorney's fees is within trial court's discretion, and appellate court should not interfere with decision absent a clear showing of abuse of that discretion). Neither Father nor Mother has demonstrated any abuse of discretion by the trial court in refusing to award either party their attorney's fees. Accordingly, we affirm the trial court's decision on this issue.

While we also have discretion to award attorney's fees incurred on appeal pursuant to Tenn. Code Ann. §36-5-103(c), we decline to exercise our discretion to award fees to either party in this case.

## V. CONCLUSION

The trial court's decision is affirmed in all respects. The costs of this appeal shall be taxed to the appellant, Kevin Dale Schreur, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE