# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 16, 2016 Session

# IN RE BRAYLIN D.[1]

### Appeal from the Juvenile Court for Davidson County
### No. 2008001074    Sheila Calloway, Judge

_____

### No. M2015-02491-COA-R3-JV – Filed February 7, 2017
_____

Mother, who had been designated as the primary residential parent of her eight-year-old child, appeals an order changing the designation to the child's Father, contending that the material change of circumstances since the entry of the original parenting plan, as found by the trial court, was not sufficient to justify the modification of custody.  We have determined that the evidence does not show that the child's well-being has been adversely affected by the difficulties the parents have encountered in complying with the parenting plan or that the modification is in the child's best interest; accordingly, we reverse the order changing the designation of the primary residential parent.  We reverse the order denying Mother's request for attorney's fees for services incurred in securing a judgment for back child support and remand for a determination of the amount of the award.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part and Affirmed in Part; Case Remanded

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ANDY D. BENNETT, J., joined.

Gregory D. Smith, Nashville, Tennessee, for the appellant, Ashley U.

Venus Niner, Franklin, Tennessee, for the appellee, Bobby D.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

Ashley U. ("Mother") and Bobby D. ("Father") are the parents of Braylin D., born October, 2007.  On November 4, 2009, the Davidson County Juvenile Court entered a

---

[1] This Court has a policy of protecting the identity of children by initializing the last names of the parties.

parenting plan designating Mother as primary residential parent and granting her 262 days of parenting time per year, and granting Father 103 days of parenting time.[2] Since the entry of the plan, the parties have filed numerous motions seeking modification of parenting time and/or child support and to hold the other party in contempt. Mother subsequently moved to Wilson County, and the case was transferred to Wilson County Juvenile Court in September of 2012. On October 14, 2014, the Wilson County Juvenile Court entered an order disposing of pending matters and a separate order transferring the case back to Davidson County, due to Mother's return to Davidson County. At all times material to the proceedings leading to this appeal, Father lived in Atlanta, Georgia.

The Davidson County Juvenile Court held hearings over five days in August, September, and November of 2015 on Father's Amended Petition to Modify Parenting Plan, Child Support, and for Criminal Contempt[3] and Mother's petition to modify the parenting plan, for past support and contempt, as amended, which was filed on July 8, 2015. The court also heard testimony relative to a Petition to Modify Child Support, filed by Father in June 2012, which had been transferred to Wilson County and subsequently transferred back to Davidson County in 2014, but which had not been adjudicated.

In an order entered on December 22, 2015, the court dismissed Mother's petition to have Father held in criminal contempt; entered a parenting plan changing the primary residential parent to Father, giving Mother 130 days of parenting time, and giving Father 235 days; modified child support to be consistent with the change in designation of primary residential parent and modification of the parenting schedule; modified Father's child support obligation to $351.00 per month retroactive to June 2012; determined that Father's total obligation of support from October 2011 to December 2015 was $33,642.00 and entered judgment in that amount; ordered Father to pay a previously ordered amount of $6,377.87 of attorney's fees to Mother;[4] and held each party responsible for their attorney's fees incurred in connection with the hearing.

Mother appeals the judgment, contending that the court erred in finding a substantial and material change in circumstance such as to justify modifying the designation of primary residential parent and in holding that such modification was in the

---

[2] In their briefs, Mother and Father recite that the original parenting plan was entered in Davidson County Juvenile Court on May 21, 2009; there is no parenting plan or order of that date in the record before us. Exhibit 1 to the August 31, 2015 hearing was the Permanent Parenting Plan Order, entered as a "new plan" in Davidson County Juvenile Court on November 4, 2009. This is the plan referenced by the court in the order under appeal.

[3] The amended petition is not in the record; however, the final order recites that it was filed on July 2, 2015.

[4] In the portion of her pleading asking for judgment for back support, Mother stated that Father had been ordered to pay, but had not paid, this amount in attorney's fees to Mother.

child's best interest, and in failing to award her attorney's fees. She also requests attorney's fees for this appeal.

**STANDARD OF REVIEW**

Whether a material change of circumstance has occurred is a factual question. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review the trial court's factual findings *de novo*, accompanied by a presumption of the correctness of those findings, unless the evidence preponderates otherwise. *Id*. at 692 (citing Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984)). Because decisions regarding custody and visitation are factually driven and hinge on subtle factors, we give substantial deference to trial judges, who are better positioned than appellate judges to evaluate the facts. *Id*. at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007)). Accordingly, we will not disturb a trial court's parenting arrangement absent an abuse of discretion. *Id*. An abuse of discretion occurs when a decision is based on "an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or causes an injustice." *Id*. (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)).

**ANALYSIS**

## A. Change in Primary Residential Parent

Mother and Father concede that there is a material change in circumstance sufficient to justify modifying the parenting schedule; where they differ—and the crux of our analysis—turns on whether the change was sufficient to modify the designation of primary residential parent. A succinct explanation of the framework for such a determination was set forth by this Court in *Burnett v. Burnett*:

> We apply the two-step analysis in Tennessee Code Annotated § 36-6-101(a) (2014) to requests for modification of the primary residential parent or the residential parenting schedule. *See, e.g., In re T.C.D.,* 261 S.W.3d at 743 (primary residential parent modification); *In re C.R.D.,* No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (residential parenting schedule modification). The threshold issue is whether a material change in circumstance has occurred since the court's prior custody order. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B); *Armbrister,* 414 S.W.3d at 697–98. Only after it is determined that a material change in circumstance has occurred must the court determine whether modification is in the child's best interest. *Armbrister,* 414 S.W.3d at 705.

3

A change in circumstance with regard to a residential parenting schedule is "a distinct concept" from a change in circumstance with regard to custody. *Massey–Holt v. Holt,* 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), −101(a)(2)(C). If a parent requests a modification of custody, also known as a change in the primary residential parent, then the parent must "prove by a preponderance of the evidence a material change in circumstance." *Massey–Holt,* 255 S.W.3d at 607. A material change in circumstance in this context may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). Although there are "no hard and fast rules for determining when" a material change in circumstance has occurred, factors for our consideration include: (1) whether the change occurred after entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change affects the child's well-being in a meaningful way. *Kendrick,* 90 S.W.3d at 570.

No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015).[5]

The court made separate findings of fact and conclusions of law in the final order; relative to modifying the parenting plan, the court stated the following in the "Conclusions of Law" portion of the order:

In this case, the parties concede that there is a material change of circumstances that would satisfy a modification of the parenting schedule. The Court also finds that there has been a showing by a preponderance of the evidence that there is a material change of circumstance that would justify a modification of custody. In particular, the Court heard much evidence as to the failure of both parents to adhere to the parenting plan and visitation, including phone visitation. There were numerous amounts of

---

[5] *Burnett* also distinguished the threshold when seeking a modification of the parenting schedule:

The threshold for establishing a material change in circumstance where the issue before the court is a modification of the residential parenting schedule is much lower. *See, e.g., Boyer v. Heimermann,* 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), −101(a)(2)(C). . . . To modify a residential parenting schedule, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test." *Rose v. Lashlee,* No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006).

*Burnett*, 2015 WL 5157489, at *6.

4

phone calls that were not adhered to as contemplated by the original order. Although the Father was allotted two (2) forty-five minute calls or three (3) thirty minute calls with the minor child each week, there is evidence that those calls did not always occur. There were several occasions that the Father attempted to call with no answer. There were also indications that the Mother may have attempted to call the Father back with no answer. There were definitely times when the Father was unable to exercise his two or three calls per week for the amount of time allotted by the actions or inactions of both parents. The parties have illustrated to the Court the need to set specific days and times for the phone calls since the parties do not have the ability to work together to ensure that the calls occur.

Furthermore, there was evidence that the Mother did not adhere to the "Rights of Parents" that were made a part of the parenting plan and thus, an order of the court. In one specific example, there was testimony by both sides that the Mother travelled to Canada for a weekend without notifying the Father. The Mother argues that her trip was less than forty-eight (48) hours.[2] The Court finds it inconceivable that the Mother would drive with the child and her boyfriend to Toronto, Canada to stay for just a couple of hours and then drive back to make it back to Nashville just under the allotted 48 hours. Furthermore, the Court finds that it is not in good faith for the Mother to not communicate to the Father her intentions to take the child out of the country for any period of time, even if it is less than two (2) days. For these reasons, the Court finds that there is a preponderance of the evidence to show a material change of circumstances for a change in custody.

[2] Under the Parent Rights section of T.C.A. 36-6-101(a)(3)(A)(viii) a parent must notify the other parent and provide an itinerary including telephone numbers in case of an emergency if the parent leaves the state with the minor child for more than two (2) days.

The court then proceeded to discuss Braylin's best interest, examining the factors at Tennessee Code Annotated section 36-6-106.

Mother and Father have a history of contentious litigation, largely relating to child support, compliance with the parenting plan, and efforts to hold the other party in contempt of court. The specific difficulties cited by the court here, however, are not of such a character or magnitude that, standing alone, would support a change in the primary residential parent; rather, they relate directly to the workability of the parenting plan and are more appropriately addressed by modifying the plan. Accordingly, we will examine the evidence relative to Braylin's well-being to see if it demonstrates that modification of the designation of primary residential parent is in his best interest.

5

No specific evidence relating to whether the changes in circumstances affected Braylin's well-being was presented; however, pertinent evidence came from Anthony Clausi, a therapist with the Vanderbilt psychiatric department. Mr. Clausi, primarily quoting from office notes, testified that Braylin was first seen for an evaluation on November 11, 2013, and was diagnosed with "adjustment disorder with mixed anxiety and depressed mood"; that he met with Braylin and Mother on March 27, 2014; with Father and Braylin on March 31, 2014; with Braylin only on June 2, 2014; and with Braylin and Mother on September 16, 2014. Mr. Clausi's testimony, explaining entries on the treatment notes, reported that Braylin worries about his parents; that long intervals of time passed between therapy sessions with Braylin; that Mr. Clausi advised Mother to schedule a medical evaluation for Braylin; and that Braylin's school administrator called him on two occasions asking for advice as to how she could best help Braylin. While he testified about the reports of conflict between the parents reflected in the notes, Mr. Clausi was not asked and did not express any opinion as to the effect, if any, that conflict had on Braylin's well-being; neither was Mr. Clausi asked nor did he opine as to any recommendation of what was in Braylin's best interest in light of the circumstances, his treatment of Braylin, and his interaction with Mother and Father.[6]

Neither Mr. Clausi's testimony nor the medical records mention Mother's trip to Canada or that the trip affected Braylin's well-being. Moreover, while Mr. Clausi testified regarding Braylin's phone calls with Father, there was no evidence that Father's missed phone calls affected Braylin.[7] As noted earlier, the matters cited by the court are more appropriately addressed in modifying the parenting schedule, rather than changing the designation of primary residential parent. The evidence preponderates against the court's finding that Mother's trip to Canada or the difficulties with Father's phone visitation constituted a material change sufficient to modify custody. *See Burnett*, 2015 WL 5157489, at *6 (holding that not every violation of parental rights under the parenting plan "will rise to the level of a material change in circumstance necessary to change the primary residential parent" and that Mother failed to prove by a preponderance of the evidence that the Father's unilateral decision to place the children in a homeschool program was a change that "affected their well-being in a meaningful way.")

---

[6] The June 2, 2014 meeting note stated that Mother presented him with a phone video "showing [Braylin] having what seemed like a panic attack because [Braylin's] father would not let [Braylin] hang up on a telephone conversation," and that "if the judge were to have therapist call in, therapist would be able to recommend that phone calls with [Braylin] be at an appropriate time and of a reasonable duration."

[7] Taken in context, the testimony related to this matter suggested that the difficulty was caused by the fact that calls were scheduled for late evenings.

## B. Attorney's Fees

### 1. Trial Level

Mother asserts that she was entitled to an award of attorney's fees, pursuant to Tennessee Code Annotated section 36-5-103(c), which reads:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). She argues that she was successful in prosecuting and defending an "action concerning the adjudication of the custody" of the child, as well as in enforcing an award of custody.

Because the decision to award attorney's fees is within the trial court's discretion, this Court will only reverse such a decision when there is a clear showing that the court abused its discretion by applying an incorrect legal standard, reaching an illogical conclusion, or causing an injustice to a party. *See Taylor v. Fezell*, 158 S.W.3d 352, 359 (quoting *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995)).

Both parties have engaged in a history of defending and prosecuting suits against the other as respects their parental rights and duties. In September of 2011, the trial court entered an order requiring Father to pay Mother $6,377.87 in attorney's fees after finding that Father was unwilling to comply with discovery requests as to his finances in his effort to modify child support; in the final order appealed in the present case, the court held that Father "must pay the previously ordered amount of $6,377.87 of attorney's fees to the Mother." The final order enforcing the previous judgment of $6,377.87 reflects the court's belief that Mother should not have to bear the costs she incurred in enforcing a previous judgment. For the same reason, we conclude that requiring Mother to bear the fees she incurred to enforce the previous decree of child support would cause her an injustice. Accordingly, in addition to the $6,377.87 ordered by the trial court, we award Mother the portion of the attorney's fees she incurred which are attributable to securing the judgment for the child support arrearage. We do not conclude on the record presented that the court abused its discretion in declining to award Mother her attorney's fees for the time spent relative to litigating the competing petitions to modify the parenting plan.

7

*2. Appeal*

An award of attorney's fees for services rendered on appeal rests solely within the discretion of this Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995). In our discretion, we have determined that an award is not warranted on the record presented.

## CONCLUSION

For the foregoing reasons, we reverse the change in the designation of primary residential parent and the denial of attorney's fees to Mother for time spent in securing a judgment for the child support arrearage; in all other respects, the judgment is affirmed. The case is remanded for further proceedings in accordance with this opinion and judgment.

_____
RICHARD H. DINKINS, JUDGE
