FILED
12/19/2017
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 6, 2017 Session

# C.W.H. v. L.A.S.

**Appeal by Permission from the Court of Court of Appeals**
**Juvenile Court for Hamilton County**
**No. 248546, 248547  Robert D. Philyaw, Judge**

_____

**No. E2015-01498-SC-R11-JV**

_____

This is a custody case involving the minor children of unmarried parties. C.W.H. (hereinafter "Father") and L.A.S. (hereinafter "Mother") agreed to a modification of an existing parenting plan in 2013. Subsequently, Father learned information to which he was not privy during the settlement conference, namely, that Mother had relocated from her state of residence (Ohio) to Nevada with the parties' minor children, where she was employed as a prostitute. Father filed a motion for an emergency temporary custody order and a temporary restraining order. Father prevailed in a hearing before the juvenile court magistrate and was designated as the primary residential parent. Mother requested a hearing before the juvenile court. Following a hearing, the juvenile court found a material change in circumstances and upheld the magistrate's determination. Mother appealed to the Court of Appeals, which vacated and remanded the case for the juvenile court to conduct a best interest analysis. On remand, the juvenile court affirmed its earlier findings regarding a material change in circumstances and, in addition, concluded that changing the primary residential parent from Mother to Father was in the best interest of the children. Mother again appealed to the Court of Appeals, which concluded "that the evidence preponderate[d], in part but significantly, against the juvenile court's factual findings," reversed the juvenile court, and mandated that its order be carried out within twenty days. We granted Father's application for permission to appeal pursuant to Tennessee Rule of Appellate Procedure 11 to decide, as set forth in Father's application, whether "the Court of Appeals err[ed] in reversing the [juvenile court] and awarding Mother custody of the minor children" and whether "the Court of Appeals err[ed] in ordering the change in custody prior to an opportunity for the Father to appeal to this Court?" We answer both questions in the affirmative, reverse the decision of the Court of Appeals, and remand this matter to the juvenile court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed; Remanded to the Juvenile Court**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Randall D. Larramore, Chattanooga, Tennessee, for the appellant, C.W.H.

Alan R. Beard, Chattanooga, Tennessee, for the appellee, L.A.S.

**OPINION**

I.  Procedural History and Facts

Mother and Father began a dating relationship in 2008.  During that time, Father lived in Pennsylvania and Mother lived in Ohio.  Mother became pregnant with the parties' older child, P.H.,[1] and gave birth to their son on January 22, 2009.  Soon thereafter, Mother moved to Chattanooga, Tennessee, and resided with her mother.  Father relocated two to three months later, in August 2009, and lived with Mother.  Father cared for P.H. as a stay-at-home father.  The parties' younger child, daughter V.H., was born on June 27, 2010.  Because Father had found employment, the parties shared parenting responsibilities of both children.

In November 2010, the relationship deteriorated and the parties separated.  Mother planned to relocate to Ohio in pursuit of a master's degree.  To facilitate the move, the parties entered into an agreed parenting plan in May 2011 to accommodate the distance and address parenting time.  The plan designated Mother as the primary residential parent and allotted Father 144 days of parenting time per year.  Mother relocated to Ohio in June 2011, but the children remained with Father until the end of the summer so that Mother could acclimate to her new residence.

After having difficulties exercising his parenting time, in February 2012 Father filed a petition in the Hamilton County Juvenile Court[2] to modify the 2011 agreed parenting plan.  Prior to resolution of Father's petition, Father contacted Mother in January 2013 and confided in her that he and his new wife (hereinafter "Stepmother")

---

[1]  To protect the anonymity of minors, it is the policy of this Court to refer to the children as well as the parties by their initials.

[2]  Because the parties were never married, the juvenile court exercised jurisdiction over this matter.  Thus, the juvenile court acted as the trial court, or court of record, in this case.

had an altercation the previous evening, which caused her to leave the home after consuming alcohol. As a result, Stepmother was arrested and placed in jail until the following day. While Stepmother was in jail, Father invited a female acquaintance to the residence under the auspices of obtaining legal advice because the acquaintance's grandmother was an attorney. Instead, as the children were sleeping, Father and his female acquaintance ingested cocaine that she brought with her. Because Stepmother was still in jail, Father asked Mother to have her family assist with childcare in the interim. Mother stated that she did so but that she also tried to protect Father's image by not divulging the reason that he requested help from her family. Father indicated that he had not ingested cocaine since that date; he and Stepmother submitted to two separate drug tests in July and October 2013 that yielded negative results.

During a February 2013 conference, Mother indicated that she was working as an independent contractor in social work. She said she was seeking employment in different states and that Nevada was one such state. Father had previously noted that in January 2013 when the children arrived in Tennessee for a visit, the children's luggage bore labels from Charlotte and Phoenix, but he was unaware that the children had visited the western United States. The parties agreed upon a modified plan that addressed Father's concerns but left the residential parenting designation and the parenting time between the parties as it was.[3] The juvenile court issued an order incorporating the parenting plan on March 1, 2013.

Shortly thereafter, Mother's sister contacted Father and informed him that Mother actually resided in Nevada with the minor children and that she was employed as a prostitute. Father had believed that Mother resided in Ohio and worked as an independent contractor. Father researched the internet and confirmed these assertions when he found sexually explicit photographs and videos of Mother advertising her services as a prostitute employed by the Moonlight Bunny Ranch in Nevada. He filed a motion for an emergency temporary custody order and temporary restraining order on

---

[3] The agreement also resolved issues of child support and medical bill arrearages that are not at issue in this appeal. However, for clarity we note that the parties settled on a child support arrearage of $2,527 and medical bill arrearage of $7,500. Mother offered testimony, but no supporting evidence, that the medical bills actually totaled around $33,000. Attorney for Father briefly addressed Father's child support obligation at the hearing on February 26, 2014, and indicated to the juvenile court that Ohio originally set the child support obligation for P.H. when the parties resided there around the time of his birth, which was duplicative of Tennessee's order of child support for the same child entered at the time of the parties' separation. Therefore, it is unclear from where the parties derived the amount of arrearage and what amount, if any, amounted to duplicate payment.

- 3 -

March 12, 2013. The magistrate found that a material change in circumstances had occurred and that it was in the children's best interest for Father to be designated as the primary residential parent. Mother requested a hearing before the juvenile court, and the juvenile court heard testimony on October 18, 2013, and December 2, 2013.

Relevant to this appeal, Mother testified at trial that she had previously been employed as a prostitute in Nevada but that she was no longer so employed. She stated that she accepted employment at the Moonlight Bunny Ranch for financial reasons due to the large amount of debt she had accumulated pursuing her master's degree and Father's failure to provide child support for the minor children. When questioned about why she did not disclose her relocation to Nevada and her employment there, she stated that she was not asked about it. At the time of trial, Mother was employed as a social worker, and she provided documentation to that effect. She indicated that she would not return to prostitution because that line of work seemingly affected the court's decision with regard to her continuing to be the primary residential parent and because the code of ethics of her current career strictly forbade such work.

The juvenile court also heard testimony relative to the issue of Mother's hostility toward Father. In March or April 2011, before Mother's departure to Ohio, Father met Stepmother, whom he married in September 2011. Mother acknowledged having a verbal altercation with Stepmother (before Father and Stepmother married) in the restaurant at which Stepmother was employed. Mother, while actually on a date with another man herself, learned from her date—who, unbeknownst to her, was a friend of Father—that Father had been dating Stepmother during the pendency of Mother's relationship with Father. This revelation caused Mother to confront Stepmother and to engage in the public altercation with Stepmother.

When Father attempted to exercise his parenting time with the children in August 2011 for his birthday, Mother refused to allow Father to visit with the children outside of their daycare facility because Stepmother accompanied him on the visit. Father was denied his parenting time over the Thanksgiving holiday in 2011; Mother became angry and called the police, reporting that Father was attempting to kidnap the children.

Prior to Father's and Stepmother's wedding, Mother received an email from Father's account that she suspected had been sent by Stepmother. With the intent to provoke Stepmother, Mother replied to the email and attached a sexually explicit photograph of herself to the email. Mother refused to allow the minor children to participate or even to attend Father's and Stepmother's wedding, and she repeatedly

admonished the children that Father's and Stepmother's new baby, daughter C.H., was not their sister.[4]

During the pendency of the litigation in the juvenile court, Father sought and obtained a position with a different restaurant management company that would allow him to receive managerial training. Father was also able to provide health insurance for the children through his new employer, and he provided copies of insurance cards for the children to Mother at the hearing.

The juvenile court ruled in favor of Father, stating:

> At the time of the hearing before the Magistrate on August 1, 2013, Mother was still working full-time as a legal prostitute in Nevada. At the time of the rehearing, Mother testified that she is now working full-time as a social worker in Nevada.
>
> Although Mother testified that she has no plans to work as a prostitute any more, there apparently is no other reasonable tie for her in Nevada. Mother's extended family is in Chattanooga. Father's wife's extended family is in Chattanooga. It is the Court's opinion that Mother lacks integrity on several issues, including this one.
>
> While both Father and Mother have at times acted irresponsibly and seemed to lack sound parenting judgment, the Court finds that there was a material change in the circumstances of the children because of Mother's deceit, Mother's occupation as a prostitute, and Mother's hostility toward Father and his wife.

Mother appealed the juvenile court's ruling to the Court of Appeals. Without addressing the juvenile court's finding of a material change in circumstances, the appellate court vacated the juvenile court's order and remanded the case for the juvenile court to conduct a best interest analysis. *C.W.H. v. L.A.S.*, No. E2015-01498-COA-R3-JV, 2016 WL 6426731, at *3 (Tenn. Ct. App. Oct. 31, 2016), *perm. app. granted* (Tenn. Apr. 12, 2017) (citation omitted).

---

[4] Mother also provided examples of instances of Father's hostility toward her. For example, preceding the December hearing, Mother had experienced difficulty exercising her weekly telephone visits with the children and was only able to speak with them around once per week despite the order that she have "unfettered" telephonic visits. In addition, Mother was supposed to have visitation with the children after Thanksgiving, but Father would not respond to her requests for a meeting time and location until she was actually on the airplane traveling to Chattanooga.

On remand, the parties had the opportunity to present additional evidence but declined to do so. By order dated July 10, 2015, the juvenile court reaffirmed its prior findings of material change in circumstance and incorporated the required best interest analysis. Specifically, pursuant to Tennessee Code Annotated section 36-6-106 (2014), the juvenile court concluded: (1) that the children were more stable with Father, *id.* § 36-6-106(a)(1); (2) that Father had been more willing than Mother to facilitate a relationship between the children and the other parent due to Mother's misgivings about Stepmother, *id.* § 36-6-106(a)(2); (3) that Father recently had been promoted at work, maintained insurance coverage for the children, and lived in a stable environment with the children, *id.* § 36-6-106(a)(4), (10); (4) that Father lived near the children's extended family, had been the primary caregiver for some time, and had exercised the majority of parenting time, and that Mother had relocated the children to Nevada where they have no family, *id.* § 36-6-106(a)(5); (5) that Father had identified a possible speech delay in V.H. upon her return from Nevada and promptly sought intervention, *id.* § 36-6-106(a)(7); (6) that Mother had engaged in an occupation which, albeit legal in Nevada, constituted an immoral act from which the children should be sheltered, *id.* § 36-6-106(a)(8); (7) that Father had already been fully providing for the children's educational needs, *id.* § 36-6-106(a)(9); (8) that Mother had offered no proof concerning the character of the people who would be visiting her home or that those visitors would not be engaged in acts contrary to the best interests of the children, *id.* § 36-6-106(a)(12); and (9) that Mother offered no proof regarding alternate child care arrangements should she be away from home at night, *id.* § 36-6-106(a)(8), (14). The juvenile court found that factors one, two, four, five, seven, nine, ten, and fourteen all weighed in favor of designating Father as the primary residential parent. *Id.* § 36-6-106(a)(1), (2), (4), (5), (7), (8), (9), (10), (14).

Mother appealed the juvenile court's ruling. In reversing the juvenile court's determination, the Court of Appeals concluded that neither the juvenile court's finding of Mother's deceit nor her former employment as a prostitute constituted a material change in circumstance without a finding of how the circumstances affected the children. *C.W.H.*, 2016 WL 6426731, at **5, 9. The Court of Appeals further concluded that the evidence did not preponderate against the juvenile court's factual findings of Mother's hostility toward Father and Stepmother or its finding that said hostility constituted a material change in circumstances because it had affected the children. *Id.* at *11. However, the Court of Appeals reasoned that the juvenile court abused its discretion in determining that it was in the best interest of the children for Father to be designated as the primary residential parent because the juvenile court relied heavily on Mother's employment as a prostitute and failed to consider in its analysis Father's child support arrearage and his ingesting cocaine in his home while the children were present. *Id.* at *16. Father's appeal to this Court followed. Upon our consideration, we hold that the Court of Appeals improperly applied the well-settled standard of review as set forth in

- 6 -

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013); that the Court of Appeals applied the incorrect version of the statute governing the requisite best interest analysis, *see* Tenn. Code Ann. § 36-6-106; and that the appellate court erred in mandating an immediate change of custody without allowing Father an opportunity to seek review by this Court, *see Brooks v. Carter,* 993 S.W.2d 603, 610-11 & n.6 (Tenn. 1999) (citing Tenn. R. App. P. 42(b)).

## II.     Analysis

Our consideration of this case requires us to address several points of law:  (1) emphasis of the appropriate standard of review to be employed in cases involving initial custody determinations and/or modifications of primary residential parenting designations; (2) clarification of the appropriate version of the statute to be utilized in conducting a best interests analysis; and (3) propriety of the appellate court's ordering the immediate change of custody without an opportunity for review by this Court.  After reviewing each point in turn, we will discuss them as applied to the facts of this case.

### A.     Standard of Review

This Court has previously emphasized the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments.  *Armbrister*, 414 S.W.3d at 692-93 (stating that the appropriate standard of "review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise").  Notably,

> [a] trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions.  Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings.

*Id.* at 692 (citations omitted).  Indeed, trial courts are in a better position to observe the witnesses and assess their credibility; therefore, trial courts enjoy broad discretion in formulating parenting plans.  *Id.* at 693 (citing *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007).  "Thus, determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Id.* (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)).  Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

On appeal, we review a trial court's decision regarding parenting schedules for an abuse of discretion. *Armbrister*, 414 S.W.3d at 693 (citing *Eldridge*, 42 S.W.3d at 88). This Court stated, "'An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice.'" *Id.* (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)); *see also Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014) (applying same standard announced in *Armbrister*—a case involving modification of a residential parenting schedule—to a trial court's initial primary residential parenting designation). "Appellate courts should reverse custody decisions 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence.'" *Kelly*, 445 S.W.3d at 696 (quoting *Armbrister*, 414 S.W.3d at 693); *see Eldridge*, 42 S.W.3d at 88.

Based upon its observations of the witnesses at trial, the juvenile court concluded that Mother "lacked integrity" on several issues. The Court of Appeals specifically declined to defer to the juvenile court with regard to this finding *vis-à-vis* Mother's continued employment as a prostitute, in light of the documentary evidence to the contrary. The appellate court also seemingly declined to extend deference to the juvenile court's finding regarding lack of integrity during its consideration of the other issues addressed in its opinion. *See, e.g., Kelly*, 445 S.W.3d at 692-93 (stating that "appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses'" (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). While there was documentary evidence to negate the juvenile court's finding with regard to prostitution, our review of the record reveals no such evidence sufficient to negate the deference owed the juvenile court as to this finding in other areas. By declining to defer to the juvenile court on this matter, the Court of Appeals improperly usurped the role of the juvenile court.

### B.     Material Change in Circumstances

After a permanent parenting plan has been incorporated into a final order or decree, the parties are required to comply with it unless and until it is modified as permitted by law. *Armbrister*, 414 S.W.3d at 697; *see* Tenn. Code Ann. § 36-6-405. "In assessing a petition to modify a permanent parenting plan, the court must first determine if a material change in circumstances has occurred and then apply the 'best interest' factors of section 36-6-106(a)." *Id.*; *see* Tenn. Code Ann. § 36-6-101(a)(2)(B)-(C).

With regard to a material change of circumstances, Father prevailed at trial by the court's finding three material changes:  deceit on the part of Mother; Mother's prior

employment as a prostitute; and Mother's hostility toward Father. The Court of Appeals rejected both deceit and Mother's prostitution, stating that those factors, without a showing of how they affected the minor children, did not constitute material changes of circumstances. *C.W.H.*, 2016 WL 6426731, at \*4-9. However, the Court of Appeals agreed with the juvenile court's conclusion that Mother had exhibited hostility toward Father, therefore constituting a material change of circumstance. *C.W.H.*, 2016 WL 6426731, at \*10.

Father appealed the Court of Appeals' decision reversing the primary parenting designation to this Court. Mother did not seek review of any sort, including whether her hostility toward Father amounted to a material change of circumstances. "The scope of our review in this case depends, in large part, on the issues that the parties have presented to this Court." *Hodge v. Craig*, 382 S.W.3d 325, 333-34 (Tenn. 2012) (footnote omitted). Subject to the exceptions contained in Tennessee Rule of Appellate Procedure 13(b), none of which are implicated in this case, "issues are properly raised on appeal to this Court when they have been raised and preserved at trial and, when appropriate, in the intermediate appellate courts and when they have been presented in the manner prescribed by [Tennessee Rule of Appellate Procedure 27]." *Id.*

As this Court stated in *Hodge:*

> Appellees who have not filed a notice of appeal and parties who have not filed a Tenn. R. App. P. 11 application of their own have three options with regard to framing the issues on appeal. First, they may simply accept the issues as framed by the appellant. Second, they may reframe the issues presented by the appellant if they find the appellant's formulation of the issues unsatisfactory. Third, they may present additional issues of their own seeking relief on grounds different than the grounds relied on by the appellant or the party filing the Tenn. R. App. P. 11 application.

*Id.* at 335 (citing Tenn. R. App. P. 27(b)) (footnotes omitted). In this case, Mother, as appellee, did not utilize any of the three approaches allowed by the rule. However, she opted for a fourth option of filing a "sur-reply" brief to Father's reply brief. The Rules do not provide for such a filing. *See* Tenn. R. App. P. 27(c) (regarding reply briefs, an "appellant may file a brief in reply to the brief of the appellee. *If the appellee also is requesting relief from the judgment*, the appellee may file a brief in reply to the response of the appellant to the issues presented by appellee's request for relief" (emphasis added)). Mother did not seek review of the decision of the Court of Appeals regarding the juvenile court's finding of hostility as a material change in circumstances, thus, she was not entitled to any further briefing in this Court. The ruling of the juvenile court, as affirmed by the Court of Appeals, constitutes an unappealed finding of a material change

in circumstances.  Accordingly, it is not necessary to delve into the quagmire of whether legal prostitution in Nevada can serve as the basis for a material change in circumstances in Tennessee, as such a determination is pretermitted by reliance on the unappealed finding of the juvenile court.  The juvenile court's finding of Mother's hostility toward Father was affirmed by the Court of Appeals.  The Court of Appeals' affirmation of that determination was not appealed to this Court.

## C.     Best Interest Analysis

Our conclusion that the evidence supports the juvenile court's "finding of a material change in circumstances answers only the threshold question in this modification proceeding.  It does not predetermine the outcome of the case." *Armbrister*, 414 S.W.3d at 705 (citing *Boyer*, 238 S.W.3d at 260).  We must next consider whether the existing parenting plan is no longer in the best interest of the children. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B) (noting that "a material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child").  The pertinent factors to be considered in the best interest analysis are set forth in Tennessee Code Annotated section 36-6-106.

In reversing the juvenile court's best interest analysis, the Court of Appeals concluded that the juvenile court misapplied Tennessee Code Annotated section 36-6-106 by consulting the newer version of the statute as amended July 1, 2014, rather than its predecessor. *C.W.H.*, 2016 WL 6426731, at *11 n.8.  Father filed the petition at issue in this case in March 2013.  The juvenile court conducted the hearings in October and December 2013 and filed its initial order in December 2013.  The Court of Appeals issued its mandate on January 8, 2015, at which time the newer version of section 36-6-106 was in effect.

Before considering the merits of the best interest analysis conducted by the juvenile court, we must first address whether the juvenile court properly applied the factors as set forth in the 2014 amendment to Tennessee Code Annotated section 36-6-106 or whether the version of the statute in effect in 2012 should have governed the juvenile court's analysis.

This Court has held that

[g]enerally[,] statutes are presumed to operate prospectively and not retroactively. *Woods v. TRW, Inc*., 557 S.W.2d 274, 275 (Tenn. 1977); *Cates v. T.I.M.E., DC, Inc*., 513 S.W.2d 508, 510 (Tenn. 1974).  An exception exists, however, for statutes which are remedial or procedural in

- 10 -

nature. Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result. *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976).

*Kee v. Shelter Ins.*, 852 S.W.2d 226, 228 (Tenn. 1993). "The usual test of the 'substantive' or 'procedural' character of a statute for this purpose is to determine whether or not application of the new or amended law would disturb a vested right or contractual obligation." *Saylors*, 544 S.W.2d at 610 (citations omitted). This Court further stated that "procedure" is defined as:

> [T]he mode or proceeding by which a legal right is enforced, as distinguished from the law which gives or defines the right, and which by means of the proceeding, the court is to administer—the machinery, as distinguished from its product; . . . including pleading, process, evidence, and practice . . . . Practice [is] the form . . . for the enforcement of rights or the redress of wrongs, as distinguished from the substantive law which gives the right or denounces the wrong. . . .

*Id.* (quoting *Jones v. Garrett*, 386 P.2d 194, 198-99 (Kan. 1963)) (alterations in original). The statute at issue in this case created no rights and imposed no liabilities. *See, e.g.*, *Saylors*, 544 S.W.2d at 610. It merely governed the mechanism by which a trial court should conduct a best interest analysis. As such, the statute is procedural in nature, and the version in effect at the time of the juvenile court's 2015 order should have been applied. Apparently the parties understood the 2014 version to contain the correct analysis, as both parties relied upon the 2014 amendment in their briefings to the juvenile court in support of the best interest analysis. The juvenile court properly applied the 2014 version of Tennessee Code Annotated section 36-6-106, and the Court of Appeals erred in holding otherwise.[5]

However, this error is not outcome-determinative. Our conclusion would be the same under either version of the statute. In this case, the juvenile court considered the

---

[5] This Court has previously held that a trial court does not err by referencing a statutory amendment with an effective date that accrued at a later time, because the amended legislation "reflected the General Assembly's most recent policy statement on the question before the trial court and was not a change in policy but a more specific statement of the policy already expressed in other statutes." *Armbrister*, 414 S.W.3d at 706 n.22.

appropriate statutory factors. The juvenile court also referenced the statute, which became effective July 1, 2014, directing the court to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors." Tenn. Code Ann. § 36-6-106(a). Upon evaluating all of the relevant factors, the juvenile court concluded that modifying the parenting schedule and the primary parenting designation was in the children's best interests. The evidence does not preponderate against this finding.

For the above reasons, we hold that the evidence presented at trial did not preponderate against the juvenile court's factual findings and that the juvenile court did not abuse its discretion in designating Father as primary residential parent. We reverse the Court of Appeals' decision.

### D. Court of Appeals' Mandate to Transfer Custody

In its opinion, the Court of Appeals decreed "that the children be delivered to Mother in Nevada by way of commercial air flight no later than twenty days following the entry of this order." *C.W.H.*, 2016 WL 6426731, at *16. The court provided no reason for mandating an almost immediate transfer of custody without affording Father the opportunity to file a timely permission to appeal in this Court.

Father petitioned for rehearing in the Court of Appeals with respect to execution of the court's mandate, or in the alternative, a motion for a stay to permit him time to file a Rule 11 application for permission to appeal. *See* Tenn. R. App. P. 11. Without explanation, the appellate court summarily denied Father's petition and motion.

Tennessee Rule of Appellate Procedure 42(a) provides:

(a)    Definition; Issuance; Stay on Petition for Rehearing. Copies, certified by the clerk of the appellate court, of the judgment, any order as to costs or instructions as to interest, and a copy of the opinion of the appellate court shall constitute the mandate.

. . . .

The clerk of the Court of Appeals and Court of Criminal Appeals shall transmit to the clerk of the trial court the mandate of the Court of Appeals or Court of Criminal Appeals, with notice to the parties, 64 days after entry of judgment unless the court orders otherwise. The timely filing of a petition for rehearing will stay the mandate until disposition of the petition

- 12 -

unless the court orders otherwise. The mandate shall issue 64 days after denial of the petition for rehearing or, if the petition for rehearing is granted, 64 days after entry of judgment on rehearing.

Clearly, the appellate courts' authority to alter the sixty-four day window for issuance of a mandate is within the ambit of the rule.

We disagree with the Court of Appeals' apparent invocation of the exception contained in Rule 42 in this case. Here, the children had been in Father's custody since August 2013 and had remained with Father until the court issued its opinion in October 2016. This Court has warned against the potential harm involved when an intermediate appellate court expedites the issuance of its mandate or orders that the mandate not be stayed in child custody cases:

> For instance, if a trial court awards custody of a minor child to her mother, and later that the Court of Appeals reverses the trial court's decision and awards custody to the father and orders the immediate issuance of mandate, and the Supreme Court grants a Tenn. R. App. P. 11 application filed by the mother and reverses the Court of Appeals' decision, custody of the child will have changed from the mother, to the father, and ultimately back to the mother. Such a chain of events would likely be harmful to the welfare of the child.

> While not expressly prohibited by Tenn. R. App. P. 42, we find that in a child custody case, such as this, the Court of Appeals' February 24, 1999 order directing that mandate be issued was ill-advised. Because the Father timely filed a Tenn. R. App. P. 11 application for permission to appeal, the issuance of mandate should have been stayed pending final disposition by this Court. Tenn. R. App. P. 42(b).

*Brooks v. Carter*, 993 S.W.2d 603, 610-11 (Tenn. 1999). This Court further explained:

> Rule 42(a) of the Tennessee Rules of Appellate Procedure provides that mandate shall issue after the sixty-four day period "*unless the court orders otherwise.*" (Emphasis added). We acknowledge that the rule is designed to enable the Court of Appeals to direct the immediate issuance of mandate *if the context warrants such an order*. For instance, if a child custody case involves a situation in which the Court of Appeals reasonably believed that a child would be in danger in the event that the parent awarded custody by the trial court retained custody while the issuance of mandate was stayed pursuant to Tenn. R. App. P. 42, the Court of Appeals may justifiably direct

- 13 -

that mandate be immediately issued. In the present case, however, no risk
of danger was alleged . . . .

*Id.* at 610, n.6 (additional emphasis added). In this case, as in *Brooks*, there was no
allegation of either potential or immediate danger if the children remained in Father's
custody.

We reiterate that in cases such as this, without allegations or evidence of abuse of
or potential danger to the children or other compelling reason to expedite, it is error to
order immediate issuance of an intermediate appellate court mandate.

E.     Father's Claim for Attorneys' Fees

In the Court of Appeals, Father appealed the juvenile court's denial of his
attorneys' fees. The Court of Appeals affirmed the juvenile court's ruling, given the
broad discretion vested with the juvenile court in ruling on such a matter. *C.W.H.*, 2016
WL 6426731, at \*16. We note that Father did not argue the Court of Appeals' decision
as error in this Court. Therefore, his claim for attorneys' fees is deemed waived. *See*
*Hodge v. Craig*, 382 S.W.3d at 334 (stating that for an issue to be properly raised on
appeal, it must be presented to this Court in the manner prescribed by Tennessee Rule of
Appellate Procedure 27).

**CONCLUSION**

We emphasize that pursuant to *Armbrister*, the juvenile court should be afforded
great deference to its findings of fact and analyses. In this case, the Court of Appeals
declined to extend such deference to the juvenile court. Accordingly, it failed to
accurately apply the standard of review and committed reversible error. We further
conclude that Mother's hostility toward Father, as found by the juvenile court and
affirmed by the Court of Appeals, constituted an unappealed finding of a material change
in circumstance that was not challenged in this Court via Mother's additional
unauthorized filing. We hold that the juvenile court properly applied the statutory factors
governing a best interest analysis and that its conclusion was not an abuse of discretion.
As such, the Court of Appeals' decision to the contrary is reversed. Moreover, the Court
of Appeals erred in mandating an immediate change in custody without giving Father the
opportunity to appeal to this Court. Father's claim for attorney's fees in the Court of
Appeals is deemed waived in this appeal for failure to raise the issue in the Rule 11
application or in his brief. The decision of the Court of Appeals is hereby reversed, and
this cause is remanded to the juvenile court to effect an expeditious return of the children
to the physical custody of Father in a manner least disruptive to their welfare. *See, e.g.,*
*Keisling v. Keisling*, 92 S.W.3d 374, 380 (Tenn. 2002); *In re Adoption of Female Child*,

- 14 -

896 S.W.2d 546, 548 (Tenn. 1995).  Costs of this appeal are taxed to Mother, for which execution may issue.

_____
ROGER A. PAGE, JUSTICE