IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 2, 2018

## MISTY OLIVER ALLEN v. MARIO PRYOR ALLEN

Appeal from the Circuit Court for Shelby County
No. CT-000440-14          David M. Rudolph, Judge

_____

No. W2017-02332-COA-R3-CV
_____

This is a post-divorce child custody and relocation action involving one child, who was seven years of age when the case was commenced. Following the parties' divorce, the mother was designated as the primary residential parent of the child and was awarded 225 days of co-parenting time annually. The father was awarded 140 co-parenting days per year with the child. In response to notice that the mother intended to relocate to California with the child, the father filed a petition in opposition to relocation and a petition to modify custody. The mother subsequently filed an answer and a petition requesting injunctive relief and modification of the existing permanent parenting plan. After the father's attorney failed to appear for the hearing or inform the trial court in advance of his whereabouts, the trial court dismissed the father's petitions for failure to prosecute. The trial court subsequently granted the mother's petition for injunctive relief and allowed the mother to move to California with the child. The father has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Mario Pryor Allen.

Theresa D. Childress, Bartlett, Tennessee, for the appellee, Misty Oliver Allen.

## OPINION

### I. Factual and Procedural Background

Misty Oliver Allen ("Mother") and Mario Pryor Allen ("Father") were married in August 2011. During the marriage, the parties had one child, M.A. ("the Child"). Mother filed a complaint for divorce on January 31, 2014, alleging irreconcilable differences and inappropriate marital conduct by Father. The parties were divorced by order of the Shelby County Circuit Court ("trial court") in March 2016. Concomitant with the final divorce decree, the trial court approved a permanent parenting plan designating Mother as the primary residential parent. Pursuant to the permanent parenting plan, Mother was awarded 225 days with the Child, and Father was awarded 140 days under the annual residential co-parenting schedule.

On November 1, 2016, Mother provided Father with notice, pursuant to Tennessee Code Annotated § 36-6-108(a), that she intended to relocate to California with the Child. On November 10, 2016, Father filed a petition in opposition to relocation and a petition to modify custody. In his petition to modify custody, Father alleged that a material change in circumstance had arisen because Mother did "not have sufficient income necessary to raise the minor child"; "no longer ha[d] stable housing[;] and based on [Mother's] own assertions, [had] no family support in Tennessee." According to Father's petition to modify custody, the Child would be isolated in California and "cut off from her family in Tennessee, in which she ha[d] strong and healthy relationships." Father further alleged that Mother had failed to properly provide food and clothing for the Child and that Mother had no educational plan for the Child in California. According to Father, Mother had intentionally interfered with his co-parenting time by "consistently dropping the child off late," which Father argued was "at times designed to create conflicts with [Father's] schedule." Father did not include a proposed permanent parenting plan with his petition to modify custody but requested that he be awarded sole custody of the Child with Mother receiving "some visitation" to be later determined by the trial court following a hearing.

Within Father's petition in opposition to relocation, Father acknowledged that Mother had mailed by certified mail a "Notice Regarding Relocation," informing him that she planned to relocate on December 31, 2016. According to Father, her notice failed to list a specific job as the basis for the relocation, only including that Mother was "seeking to further pursue her career path" with "greater employment opportunities in Los Angeles, California." According to Father's petition, he spent "substantially equal time, or more time with [the Child]" than Mother did, and it was not in the Child's best interest to relocate to California with Mother. Father further asserted that Mother intended to reside in California with a paramour and that Mother had "no strong, healthy, family ties in California." Father also claimed that Mother's relocation to California had

no reasonable purpose, was vindictive, was intended to deter visitation between Father and the Child, and "pose[d] a serious and significant threat that the minor child would be placed in unsafe settings and surroundings." Additionally, Father declared that he would not oppose Mother's relocation if he were awarded sole custody of the Child.

Mother subsequently filed an answer in response to Father's petitions and a petition requesting injunctive relief and modification of the permanent parenting plan. In her countervailing petition, Mother denied Father's allegations that she did not have stable housing or sufficient income to support the Child. Mother also denied that she had not provided proper food or clothing for the Child. Mother averred that the Child would be placed in a "nationally ranked school" and enjoy family support from the Child's maternal grandparents and other family members in California. According to Mother, Father had failed to consistently visit with the Child following the trial court's order directing Father to be responsible for half of the transportation costs for the visits. Mother also asserted that removing the Child from her primary custody would be "extremely disruptive and devastating to the child." Mother further averred that because Mother had been the primary caregiver for the Child for most of her life, Father was not familiar with the Child's medical and educational needs.

In her petition requesting injunctive relief and modification of the permanent parenting plan, Mother alleged that she had received an "opportunity to move with her family" in California to pursue better job opportunities and better schooling for the Child.[1] According to Mother, while she had always permitted "free communication" between the Child and Father, Father had failed to place telephone calls to the Child at "the right times" and did not answer the Child's return telephone calls. Mother claimed that she had encouraged a close relationship between Father and the Child. According to Mother's petition, it was in the best interest of the Child for Mother to remain as the Child's primary caregiver and to be allowed to relocate to California with the Child where she could attain better employment and the Child would be in a superior school district. Accordingly, Mother requested that the trial court grant her injunctive relief allowing her to relocate with the Child. Mother also sought a modification of the permanent parenting plan.

All matters were scheduled to be heard by the trial court on December 16, 2016. Although no transcript was filed with this Court reflecting this hearing, the trial court found in its subsequent written order as follows:

---

[1] Mother identified the Child's maternal grandparents and other family members as family support in California.

The Court heard proof on whether or not the move requested was for a reasonable basis, and whether or not the move was for any vindictive purpose. The Court made the following findings:

1.  Specifically, the Court finds that the basis for the move is for [Mother] to have employment in California.

2.  Based on the proof that the Court heard, this Court further finds that the move requested was not for a vindictive purpose. [The] Court found that it had heard no proof about mother being vindictive and that if anyone was being vindictive it was the Father being vindictive.

3.  The Court does not believe that the mother has kept the father from seeing their child.

4.  Father has no extended family where he is living in Murfreesboro, Tennessee.

5.  The problem that the Court has with granting the move on a temporary basis today is that the Mother has not accepted the job offer and could potentially move and not accept the job offer and would simply be looking for work.

6.  As pointed out by counsel for the Father, Mother could delay her start date until there is a full hearing in the matter.

7.  The Court is not going to allow the move until she accepts a job in California.

8.  The Court suggested to the parties that they have a failure to communicate and that they have an obligation to talk to each other as parents. [The] Court further explained that the Court did not divorce them as parents to their young daughter and that they are parents until the day that they die or the day that their child dies.

9.  The Mother is doing all she can to better herself, as the Father has told the Mother to better herself. Yet, Father wants to come into the Court and give Mother a hard time about moving to California, where almost all of her extended family lives, to better herself. All, while father is living in Murfreesboro, Tennessee with no extended family.

- 4 -

10.     The Court does not believe that the Father did not realize that his child support payments had stopped. [The] Court does not believe the testimony by the Father saying that he did not notice $430.00 extra in his account every month. [The] Court finds that Father knew that the money was not going to support his daughter. The Court finds that this is very telling of how much the Father cares about his daughter.

11.     [The] Court explained that [Father] needs to wake up and understand that his actions are hurting his daughter. Father's actions may be hurting Mother on a short term basis but the parties' failure to communicate is hurting the child on a long term basis.

12.     [The] Court explained that the parties need to communicate and that Mother should have communicated to the father that she has an ailing father. The parties need to be able to communicate so that they can help their daughter.

13.     Both parties need to understand what they are doing to their daughter.

14.     The matter shall be continued until January 20, 2017 at 10:00 a.m. Father must return on this date and present his proof.

Ergo, the trial court temporarily denied Mother's petition for injunctive relief and scheduled the matter for further hearing on January 20, 2017, at 10:00 a.m.

As ordered, the matter subsequently came to be heard on January 20, 2017. Although the record does not contain a transcript reflecting this hearing, the trial court referred to its respective notes from that hearing in relevant part as follows:

My trial notes reflect that [neither Father's counsel], nor his client, appeared when the case was called at 10:00 a.m. [Father's counsel] had emailed the clerk yesterday, but did not say that he had to be in another court.

He [e]mailed the clerk again today. He said at 10:10 to tell her he was in criminal court. The clerk said she got his email at 12:07. He also came into court at 11:29 but did not leave a note or tell anyone where he was going.

I heard from [Mother's counsel] and told her to prepare a proposed parenting plan order. Before she got back, [Father's counsel] appeared. I told him for the record that I had a previous conversation with him and warned him not to be late for court again, or to let us know that he was in another court. And that is why I dismissed his client's case, because neither he or his client appeared at 10:00 a.m.

I instructed [Mother's counsel] to enter an order reflecting the parenting time in her proposed permanent parenting plan order, and to go before the divorce referee on child support issues, including the cost of airfare of the child flying to Nashville for the father's parenting time.

The trial court entered an order regarding the January 20, 2017 hearing on March 21, 2017. The order was subsequently set aside because the order was not signed by Father's counsel and neither Father nor his counsel was included on the certificate of service. The trial court entered a second order on June 21, 2017, identical in terms to the first order, except that it included Father's counsel on the certificate of service. Father filed a motion to alter or amend the second order because Mother's attorney had failed to sign the certificate of service. Father alternatively requested that the court make additional findings of fact and conclusions of law "in order to clarify the legal issues." The trial court granted Father's motion to alter or amend insofar as Mother's attorney failed to sign the certificate of service. In its August 31, 2017 order setting aside the June 21, 2017 judgment, the trial court found as follows:

After a review of the record, and upon the statements and argument of counsel, this Court finds:

1.      That [Father's] Petitions were dismissed based on counsel for [Father] not being present, after having been warned on one previous occasion not to be late without notifying the Court as to his status. Although [Father's] Counsel had been late numerous times, on previous occasions, he was only warned by the Court one previous time that if he was late without giving the Court notice, his matter, on whatever party he was representing, would be dismissed.

2.      That a best interest analysis on the minor child in this hearing was not required because [Mother] was the primary parent, and the matter before the Court was a request to relocate by [Mother].

3.      That the Permanent Parenting Plan does not include a set number of days of parenting time for [Mother], or [Father], which lacks clarity

as to how much parenting time each party would receive, as well as makes a calculation of child support problematic.

4. That the Order that was entered on June 21, 2017, was drafted by [Mother's] Counsel, and not signed by [Father's] Counsel. In addition, the Certificate of Service page was not signed, and thus, the Order is invalid.

5. That the Order was styled in part, as the Mother's petition to modify custody, but that Mother did not file a petition to modify custody.

Also on August 31, 2017, the trial court entered a third order reflecting the January 20, 2017 hearing, which was modified somewhat from previous versions of the order. In that order, the trial court found as follows regarding the hearing that was conducted on January 20, 2017:

The Court had previously warned [Father's Counsel] not to be late, and if [Father's Counsel] was going to be late; he must timely inform the Court that he will be late due to being in another court room, or the Court would dismiss his client's case. [Father's Counsel] failed to appear for hearing at the time it was called on the docket, and failed to timely notify the Court, and therefore, the Court dismissed [Father's] Petition in Opposition of Relocation and [Father's] Petition to Modify Custody.

The Court heard proof on Mother's Petition[]. The Court made the following findings:

1. Specifically, the Court reiterated that the basis for Mother's move is for [Mother] to have employment in California. [Mother] provided proof of employment to the Court of the job that she accepted in California.

2. Based on the proof that the Court heard, this Court further finds that the move requested is not for a vindictive purpose and that Mother is the primary residential parent.

3. Mother is making reasonable efforts to insure that her moving does not affect Father's parenting time.

* * *

Therefore, it is hereby ORDERED, ADJUDGED and DECREED:

1.    That [Mother's] Petition Requesting Injunctive Relief and Modification of the Parenting Plan is granted.

2.    Mother is allowed to make her move to California.

3.    Father's Petition in Opposition of Relocation and Petition to Modify Custody are hereby dismissed for lack of prosecution.

In this order granting Mother's petition and dismissing Father's petitions, the trial court further instructed the parties to attend mediation and attempt to reach an agreement concerning a residential co-parenting schedule and child support based upon that schedule.

On November 7, 2017, Mother submitted an agreed permanent parenting plan, which the trial court approved, establishing an annual residential co-parenting schedule of 235 days of co-parenting time for Mother and 130 days in favor of Father. Pursuant to the plan, Father would also be entitled to scheduled telephone visitation with the Child and allowed to visit the Child in California at any time so long as he provided a fifteen-day notice to Mother. Based on the agreed-upon schedule and the Child Support Guidelines, Father was ordered to pay $370 per month in child support for the Child. On November 29, 2017, Father filed a notice of appeal.

## II. Issues Presented

Father presents two issues on appeal, which we have restated slightly:

1.    Whether the trial court erred by dismissing Father's petitions for lack of prosecution.

2.    Whether the trial court erred by considering Mother's petition for injunctive relief and modification of the permanent parenting plan in the absence of a proposed permanent parenting plan or a best interest analysis.

Mother raises two additional issues for appellate review, which we have similarly restated as follows:

3.    Whether Father untimely filed his notice of appeal such that this Court lacks subject matter jurisdiction.

- 8 -

4.      Whether Father's appeal is frivolous because it is taken from an agreed, mediated permanent parenting plan.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise.  *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).  We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Additionally, we review a trial court's decision to dismiss an action for failure to prosecute under an abuse of discretion standard.  *White v. Coll. Motors, Inc.*, 370 S.W.2d 476, 477 (Tenn. 1963).  "Because decisions to dismiss for failure to prosecute are discretionary, reviewing courts will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably." *Hodges v. Tenn. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000) (internal citations omitted).

## IV. Subject Matter Jurisdiction

Mother argues that in order for this Court to maintain subject matter jurisdiction, Father should have filed a notice of appeal within thirty days of the dismissal of his petitions in the August 2017 court order.  We disagree.  Tennessee Rule of Appellate Procedure 4 provides that for an appeal as of right to the Tennessee Court of Appeals, the appellant's notice of appeal "shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from."  Tennessee Rule of Appellate Procedure 3 provides for an appeal as of right solely from final judgments.  An order that does not adjudicate all of the claims between all of the parties is "subject to revision at any time before entry of a final judgment" and is not appealable as of right.  *See* Tenn. R. App. P. 3(a).  *See also In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) ("A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997))).

When the August 2017 order granting Mother's petition was entered by the trial court, the issues of a residential co-parenting schedule and child support remained undecided by the court.  In that order, the trial court directed the parties to attend mediation within sixty days to determine a co-parenting schedule and child support.  If the parties were unable to agree on a resolution of those issues, they were to schedule the

matter before the trial court. Because the trial court did not certify this August 2017 order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02 and the order did not address all issues before the court, the August 2017 order was not a final order from which Father could have appealed.[2] All issues in the action at bar were resolved when the trial court approved and entered the permanent parenting plan on November 7, 2017. We therefore determine that Father timely filed his notice of appeal on November 29, 2017.

## V. Dismissal for Failure to Prosecute

Father contends that the trial court erred by dismissing his petitions based on a failure to prosecute. Father specifically argues that the trial court failed to explain the factual basis for its dismissal of Father's petitions. Upon a thorough review of the record, we disagree.

Regarding dismissals for failure to prosecute, this Court has previously explained:

Trial courts possess inherent, common-law authority to control their dockets and the proceedings in their courts. Their authority is quite broad and includes the express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court. Tenn. R. Civ. P. 37.02(C); Tenn. R. Civ. P. 41.02(1); *Kotil v. Hydra-Sports, Inc.,* No. 01A01-9305-CV-00200, 1994 WL 535542, at *3 (Tenn. Ct. App. Oct. 5, 1994) (No Tenn. R. App. P. 11 application filed). Because decisions to dismiss for failure to prosecute are discretionary, *White v. College Motors,* 212 Tenn. 384, 386, 370 S.W.2d 476, 477 (1963), reviewing courts will second-guess a trial court only when it has acted unreasonably, arbitrarily, or unconscionably. *Friedman v. Belisomo,* No.

---

[2] Tennessee Rule of Civil Procedure 54.02 provides:

When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

- 10 -

02A01-9304-CH-00094, 1993 WL 498504, at *3 (Tenn. Ct. App. Dec. 1, 1993) (No Tenn. R. App. 11 application filed). Trial courts may, on their own motion, dismiss cases for lack of prosecution, but this authority should be exercised sparingly and with great care. *Harris v. Baptist Mem'l Hosp.*, 574 S.W.2d 730, 731 (Tenn. 1978).

*Hodges*, 43 S.W.3d at 921.

We recognize that dismissal of an action is a harsh sanction by the trial court; nonetheless, it is one specifically authorized by the Tennessee Rules of Civil Procedure. *See* Tenn. R. Civ. P. 41.02(1); *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). In the instant case, the trial court declared that neither Father nor his attorney was present before the trial court when the case was called at 10:00 a.m. on the scheduled hearing date. According to the trial court, Father's attorney had been tardy for hearings on several occasions and had been admonished by the court on one prior occasion that if he were tardy again without informing the trial court in advance, the trial court would dismiss the attorney's client's action or proceed in the attorney's absence. The trial court clerk received an email from Father's attorney at 10:10 a.m., informing her that the attorney was in criminal court; however, the clerk did not read the email until 12:07 p.m. Even if the clerk had seen the email immediately, however, Father's counsel still failed to notify the court of his absence in advance of the scheduled hearing time.

In its order, the trial court explained that Father's attorney, having been previously warned by the trial court, did not appear timely for court and failed to promptly inform the court of his whereabouts in another court. Additionally, the trial court explained during the August 18, 2017 hearing that it had dismissed Father's petitions on January 20, 2017, because neither Father nor his attorney were present when the case was called, despite the trial court's previous admonition to Father's attorney to be on time or provide timely notice to the court that he would be in another court. Our Supreme Court has elucidated that "'[a]s a general rule, an action may be dismissed or a non-suit granted because of the plaintiff's failure to appear and prosecute his case, or for his failure to prosecute his case diligently.'" *White*, 370 S.W.2d at 477 (quoting 17 Am. Jur. p. 151).

Father asserts that although his attorney was not present before the trial court when the case was called, Father was present in the hallway outside the courtroom. However, the trial court specifically included within its rationale for dismissing Father's petitions that neither Father nor his attorney was present before the court when the matter was called. Without a transcript or statement of the evidence reflecting the trial court's proceedings on January 20, 2017, this Court is left with the trial court's recollections of the hearing and the court order memorializing that hearing, neither of which evinces Father's whereabouts at the time the case was initially called. This Court has held that "the burden is . . . on the appellant to provide the Court with a transcript of the evidence

- 11 -

or a statement of the evidence. . . ." *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377-78 (Tenn. Ct. App. 2007) (concluding that there is a "conclusive presumption that there was sufficient evidence before the trial court to support its judgment" if no transcript or statement of the evidence is submitted). Upon a thorough review of the record, we determine that the trial court sufficiently explained its rationale for dismissing Father's petitions. We further conclude that the trial court did not act unreasonably, arbitrarily, or unconscionably. Therefore, the trial court did not abuse its discretion by dismissing Father's petitions.[3]

## VI. Absence of Proposed Permanent Parenting Plan or Best Interest Analysis

Father contends that the trial court erred by permitting Mother's "Petition Requesting Injunctive Relief and Modification of the Parenting Plan" to go forward despite Mother's failure to include a proposed permanent parenting plan with her petition as required by Tennessee Code Annotated § 36-6-405 (2017). In its order setting aside the June 21, 2017 order, the trial court determined that Mother's petition was, in substance, not a petition to modify the permanent parenting plan. According to the trial court, Mother was the primary residential parent of the Child at the time of the petition's filing. The trial court therefore concluded that Mother's petition was filed pursuant to the parental relocation statute codified at Tennessee Code Annotated § 36-6-108 (2017), despite the petition's referral to modification of the permanent parenting plan. Upon a parent's notice of relocation, Tennessee Code Annotated § 36-6-108(b) provides that if the parties are unable to agree on a new visitation schedule, "the relocating parent shall file a petition seeking to alter visitation."

Upon review of Mother's petition, we agree with the trial court that Mother's petition was filed pursuant to Tennessee Code Annotated § 36-6-108, which does not specifically require a parent to file a proposed parenting plan with his or her petition. We note that Father has provided no authority to support his contention that Mother's petition to relocate was subject to the requirement of providing a proposed permanent parenting plan under Tennessee Code Annotated § 36-6-405(a). Assuming, *arguendo*, that Tennessee Code Annotated § 36-6-405(a) applies to petitions filed pursuant to Tennessee Code Annotated § 36-6-108 and that Mother was required to file with the trial court and serve on Father a proposed parenting plan with her petition, the trial court was not required to dismiss Mother's petition based solely on her failure to comply with section 36-6-405(a).

---

[3] Although Mother avers that the trial court dismissed Father's petitions without prejudice, we note that unless the trial court specifies otherwise, the trial court's dismissal of an action for failure to prosecute operates as an adjudication on the merits. *See* Tenn. R. Civ. P. 41.02(3).

Tennessee Code Annotated § 36-6-405 requires that "[i]n a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification and with the response to the petition for modification." Tennessee Code Annotated § 36-6-405 does not provide a remedy or sanction for a party who fails to file a proposed parenting plan; however, Tennessee Code Annotated § 36-6-404(c), which is applicable to final divorce decrees, provides that a party's failure to file a proposed parenting plan "may result in the court's adoption of the plan filed by the opposing party if the court finds such plan to be in the best interests of the child."

Other cases have applied this approach in comparable situations where a party has not complied with section 36-6-405 by filing a proposed permanent parenting plan with the petition or answer to modify. *See Massey-Holt v. Holt*, 255 S.W.3d 603, 612 (Tenn. Ct. App. 2007) (reversing the trial court's judgment as unsupported by the evidence and, in part, because one parent failed to submit a proposed parenting plan pursuant to section 36-6-405(a)); *Ballard v. Cayabas*, No. W2016-01913-COA-R3-CV, 2017 WL 4570414, at *5 (Tenn. Ct. App. Oct. 12, 2017), *perm. app. denied* (Tenn. Feb. 15, 2018) (applying the remedy contained in Tennessee Code Annotated § 36-6-404(c)(3) to a parent's failure to file or serve a proposed permanent parenting plan with a petition to modify the plan under section 36-6-405(a)). This Court has also previously determined that the trial court is not required to adopt a proposed permanent parenting plan submitted by the parties but may fashion its own parenting plan that it deems to be in the best interest of the child. *See Johnson v. Johnson*, No. E2012-02618-COA-R3-CV, 2013 WL 5373064, at *4 (Tenn. Ct. App. Sept. 23, 2013) ("[E]ven if Father's proposed parenting plans had been the only ones before the Trial Court, Father's contention that the Trial Court somehow was required to adopt one of his proposed parenting plans is mistaken."). Accordingly, we conclude that although this Court has determined that a party's failure to provide a proposed parenting plan pursuant to Tennessee Code Annotated § 36-6-405 may contribute to the overall success or failure of a petition to modify the permanent parenting plan, the trial court is not required to dismiss the parent's petition for noncompliance.

In the present action, Mother did not file or serve upon Father a proposed permanent parenting plan with her request for injunctive relief and modification of the existing permanent parenting plan. Similarly, Father failed to file and serve on Mother a proposed permanent parenting plan with his answer to Mother's petition.[4] Inasmuch as neither party complied with Tennessee Code Annotated § 36-6-405(a), no proposed permanent parenting plan was before the trial court at the hearing on January 20, 2017. At that time, the trial court directed the parties to attend mediation in an attempt to reach

---

[4] Father also failed to file a proposed parenting plan with his petition to modify. Because Father's petition was dismissed by the trial court, we are not considering Father's failure to comply with Tennessee Code Annotated § 36-6-405(a) with regard to his petition.

- 13 -

an agreement regarding the permanent parenting plan. During mediation, the parties agreed on a permanent parenting plan, which was subsequently approved by the trial court. We therefore determine that the trial court did not err by allowing Mother to proceed with her petition despite her failure to comply with Tennessee Code Annotated § 36-6-405(a).

Father also avers that the trial court erred by failing to perform a best interest analysis pursuant to the relocation statute. The version of Tennessee Code Annotated § 36-6-108 (2017) in effect at the time of the petition's filing provided as follows:[5]

> (d)(1) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
>> (A) The relocation does not have a reasonable purpose;
>>
>> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
>>
>> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the noncustodial parent or the parent spending less time with the child.
>
> * * *
>
> (e) If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the best interests of the child to relocate as

---

[5] Tennessee Code Annotated § 36-6-108 was subsequently amended in July 2018. *See* 2018 Tenn. Pub. Acts Ch. 853 § 1,2 (H.B. 1666).

- 14 -

defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall consider all relevant factors including those factors found in § 36-6-106(a)(1)-(15).

Although Father alleged in his petition in opposition to Mother's relocation that he spent "substantially equal time, or more time with [the Child]" than did Mother, the permanent parenting plan entered by the trial court in March 2017 reflects that Mother was awarded 225 days annually with the Child compared to Father's 140 days of co-parenting time. The trial court also found that Mother was the primary residential parent for the Child.

Under the applicable version of the statute, Mother, as the parent spending a greater amount of time with the Child, would be allowed to relocate with the Child unless the trial court found that (1) the relocation did not have a reasonable purpose, (2) the relocation would pose a threat of specific and serious harm to the Child outweighing the threat of harm resultant from a change in custody, or (3) Mother's motive for relocation was vindictive in that it was intended to interfere with Father's visitation. The trial court found none of the aforementioned grounds to prevent Mother from relocating to California with the Child. The trial court specifically found that Mother was relocating for employment reasons and not for a vindictive purpose. The trial court also found that Mother was making reasonable efforts to ensure that her relocation did not affect Father's visitation with the Child.

The burden of proof was on Father to prove the existence of one of the grounds enumerated in Tennessee Code Annotated § 36-6-108(d)(1). *See Aragon v. Aragon*, 513 S.W.3d 447, 460 (Tenn. 2017). If Father failed to prove one of those grounds, the trial court was "obliged to grant permission for the relocation." *Id.* ("[Tennessee Code Annotated § 36-6-108(e)] indicates that the court must address whether relocation is in the best interest of the child if—and only if—the parent opposing relocation proves at least one of the three enumerated grounds."). As such, we determine that the trial court did not err by declining to perform a best interest analysis, pursuant to the statute in effect at the time of the petition's filing, or by permitting Mother to relocate to California with the Child.

VII. Attorney's Fees on Appeal

Mother asserts that Father's appeal should be characterized as frivolous, thus entitling her to an award of attorney's fees as damages. Frivolous appeals are governed by Tennessee Code Annotated § 27-1-122 (2017), which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Although Father was not successful with regard to the issues he raised on appeal, we determine, in our discretion, that his appeal was not so devoid of merit as to warrant an award of attorney's fees to Mother. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (explaining that this Court has discretion regarding whether to award damages for a frivolous appeal); *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding."). The discretion to determine whether an appeal is frivolous should be exercised "'sparingly so as not to discourage legitimate appeals.'" *See Eberbach*, 535 S.W.3d at 475 (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). We therefore deny Mother's request for attorney's fees on appeal.

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. We deny an award of attorney's fees on appeal to Mother. We remand this matter to the trial court for collection of costs assessed below. Costs on appeal are taxed to the appellant, Mario Pryor Allen.

_____
THOMAS R. FRIERSON, II, JUDGE

- 16 -